[Civ. No. 25882.   Second Dist., Div. One.   Sept. 17, 1962.]

BEN WHITE et al., Plaintiffs and Respondents, v. FARMERS INSURANCE EXCHANGE, Defendant and Appellant.

Early, Maslach, Foran & Williams and Harry Boyd for Defendant and Appellant.

Melvin Simon for Plaintiffs and Respondents.

WOOD, P. J.—In this action for declaratory relief, the plaintiffs sought a declaration that their policy of automobile insurance, issued by defendant Farmers Insurance Exchange, included uninsured-motorist coverage in the amounts of $10,000 for each person and $20,000 as a maximum for each accident. Defendants Farmers Insurance asserted that the policy included such coverage only in the amounts of $5,000 for each person and $10,000 as a maximum for each accident. Judgment was in favor of plaintiffs. Defendant Farmers Insurance appeals from the judgment.

In October 1948, the defendant Farmers Insurance issued its policy of insurance covering plaintiffs' Chevrolet automobile for a term of six months, and thereafter for additional terms of six months upon the payment of the required premium therefor. Under ''Coverage A'' of the policy, the insurance company agreed to pay an amount not to exceed $5,000 as damages for bodily injury to one person, or not to exceed $10,000 for bodily injuries in each accident, caused by accident and arising out of the ownership of the automobile. Semiannually after the issuance of that policy (i.e., in April and October of each year) to and including October 1959, the insurance policy was renewed by the payment of the premium required by the insurance company. (In September 1956, at the request of plaintiffs, the company issued an endorsement which was attached to the policy whereby another Chevrolet automobile was substituted as the insured automobile in place of the one originally described therein.) In January 1957 the insurance company, in consideration of the premium paid by the plaintiffs with reference to ''Coverage A,'' issued an ''Uninsured Motorists Endorsement,'' which was attached to the policy. The endorsement provided in substance that the insurance company would pay to plaintiffs any amounts which

plaintiffs were legally entitled to recover as damages from the owner of an uninsured automobile by reason of bodily injuries to plaintiffs, caused by collision between plaintiffs' automobile and the uninsured automobile—the amounts to be so paid were to be within the coverage required of an owner by the Financial Responsibility Law at the time of the collision.

At that time when the uninsured-motorist endorsement was issued (January 1957) the coverage so required was $5,000 for one person and $10,000 for each accident.

During the session of the Legislature in 1957 (which ended in June 1957), the Financial Responsibility Law was amended so that the coverage required by that law was $10,000 for each person and $20,000 for each accident. That amendment, however, was ambiguous as to whether it became effective on July 1, 1959, or September 11, 1957. (See footnote[1] as to manner in which the ambiguity occurred.)

In August 1957 (prior to the first of the two purported effective dates of such amendment) the insurance company mailed to plaintiffs a document[2] which consisted of two parts

---

[1]Section 415 of the Vehicle Code was the section relative to the amounts required by the Financial Responsibility Law. In 1957 the Legislature amended that section and several other sections by enacting chapter 1653 of Statutes of 1957—section 415 as amended in that chapter required coverage of $10,000 and $20,000 instead of the former $5,000 and $10,000. It was expressly provided in said chapter 1653 that the effective date thereof was July 1, 1959. Also in 1957 the Legislature amended said section 415 and another section (417) by enacting chapter 1654 of Statutes of 1957—that amendment of section 415 was in substance the same as the other amendment thereof in chapter 1653 (i. e., requiring increased coverage of $10,000 and $20,000), but there was no provision therein as to the effective date thereof. (Since there was no provision in chapter 1654 as to the effective date, the date ordinarily would be 90 days after the adjournment of the Legislature in June, or September 11, 1957.)

[2]"IMPORTANT CHANGE MADE IN CALIF. FINANCIAL RESPONSIBILITY LAW:

"Recently changes were made in the California Financial Responsibility Law. These changes affect the amounts of insurance you will need if your car is involved in an accident. Previously if you had minimum limits of $5,000 each person and $10,000 each accident, that was sufficient, but when the new provisions become effective, you will need $10,000 per person and $20,000 per accident.

"At the time this notice was printed, there was some uncertainty as to the effective date of this change. The basic change becomes effective July 1, 1959, but because of some other law changes, there appear to be circumstances under which the new requirements become effective September 11, 1957.

"Many of the Eastern states already require $10,000/$20,000 limits, so if you are planning to drive east, you should be sure you have enough coverage to avoid loss of your driving privilege if you have an accident.

"Under the circumstances, we are of the opinion that minimum limits policies of $5,000 per person and $10,000 per accident are no longer

—the upper part which is referred to in the briefs as a notice or explanation regarding the lower part; and the lower part which is an endorsement to be attached to the policy showing the increased coverage of $10,000 and $20,000 under the new law. There is a perforated line between the parts.

The upper part states, in substance, that changes, recently made in the California Financial Responsibility Law, affect the amounts of insurance plaintiffs will need if their car should be involved in an accident; that previously the amounts of $5,000 and $10,000 were sufficient, but when the new law becames effective they will need $10,000 and $20,000; that there is some uncertainty as to the effective date of the new law—the basic change will become effective July 1, 1959, but there appear to be circumstances under which the law will become effective September 11, 1957; that the coverage of

adequate. For that reason, if your policy is one of them, then as a matter of service to you, we are taking the liberty of automatically increasing your policy limits by means of this notice. The increase is effective as of your policy renewal date.

''There is, of course, a nominal increase in your rate, which is included in your current renewal premium bill. Be sure to keep this notice with your policy papers, as it actually increases your protection.

''If you have been carrying bodily injury liability for limits of $10,000 each person, $20,000 each occurrence, or more, you may disregard this notice.

''NOTE: If your policy does not afford liability coverage it does not comply with the Financial Responsibility Law.

''If you do not wish your policy limits increased at this time, or if further information is needed, call your Farmers agent, who is always anxious to give you the best in service.

----------------------------------------[perforated line]----------------------------------------

''ENDORSEMENT INCREASING POLICY LIMITS
(Please attach to your policy if applicable)

''If this policy affords insurance under Coverage A, Bodily Injury Liability, then in consideration of the premium paid and the acceptance of this endorsement by the named insured, it is agreed that the limit of liability under Coverage A shall be:

$10,000 each person
$20,000 each occurrence

unless higher limits are stated in the declarations, in which event such higher limits shall apply.

''Effective 12:01 A. M. on the first renewal date following September 30, 1957 of the policy issued to the California resident named on the enclosed premium notice, this endorsement becomes part of said policy and supersedes and controls anything in the policy contrary hereto, but is otherwise subject to the declarations, insuring agreements, exclusions and conditions thereof.

FARMERS INSURANCE EXCHANGE
Farmers Underwriters Association
Atty. in fact
By   T. E. LEAVEY
President.''

$5,000 and $10,000 is no longer adequate; that the insurance company is taking the liberty of automatically increasing plaintiffs' policy limits "by means of this notice"; that the increase will be effective as of the policy renewal date; that there is an increase in the rate, which is included in the renewal premium bill; that plaintiffs should be sure to keep the notice with their policy papers, as it actually increases their protection; that if plaintiffs do not wish to have their policy limits increased at this time they should call their insurance agent.

The lower part of the document, which is labeled "Endorsement Increasing Policy Limits," states that it should be attached to the policy, if applicable; that if the policy affords coverage under Coverage A, for bodily injury liability, then in consideration of the premium paid and the acceptance of the endorsement by the plaintiffs, it is agreed that the limit of liability under Coverage A shall be $10,000 for each person and $20,000 for each occurrence; that the endorsement will be effective at 12:01 a. m. on the first renewal date following September 20, 1957, of the policy issued to plaintiffs.

Plaintiffs accepted said endorsement for additional insurance, and thereafter paid the semiannual premium as required by the insurance company. The insurance contract as of that time consisted of (1) the original policy, (2) the endorsement substituting a different car, (3) the endorsement for uninsured-motorist coverage, and (4) the endorsement for additional insurance under Coverage A (for bodily injury)—increasing amounts to $10,000 and $20,000.

As hereinabove stated, the endorsement for uninsured-motorist coverage provided that the amount of insurance under that coverage was the same as the amount of insurance required of an owner under the Financial Responsibility Law (for bodily injury). Also, as above stated, the uninsured-motorist insurance was issued in consideration of the premium paid with reference to "Coverage A" (for bodily injury). After the insurance under Coverage A had been increased to $10,000 and $20,000, an additional charge was made (and paid) for the additional uninsured-motorist coverage, which charge was included in the premium for insurance under Coverage A.

On February 8, 1959, while the insurance policy was in effect, the insured automobile of the plaintiffs, which was being driven by plaintiff Ben White, was involved in a collision with an uninsured automobile which was being driven

by one Davison. At the time of the collision, plaintiff Willie White, the wife of Ben, was also riding in plaintiffs' automobile. Both plaintiffs sustained bodily injuries as a result of the collision. Within a year after the collision, an action for damages was filed by plaintiff against the uninsured Davison. It was stipulated by the parties to the present action that plaintiffs would be entitled to recover, under the uninsured-motorist endorsement, "up to the policy limits" (but there was no stipulation as to the amounts that were the limits).

The findings of fact were in substance the same as the statements of fact hereinabove set forth. In addition thereto, the court found that the 1957 amendment of section 415 of the Vehicle Code (increasing the amount of insurance required by the Financial Responsibility Law) became effective on July 1, 1959; that irrespective of the effective date of the new Financial Responsibility Law to be judicially determined, the limits of liability thereunder were increased to $10,000 for each person, with a maximum of $20,000 for any one accident, and the limits of liability under the uninsured-motorist endorsement were likewise increased to said amounts by reason of the insurance policy and the endorsement increasing the policy limits; that the limits of liability of the insurance company under the uninsured-motorist endorsement are $10,000 for each person, with a maximum of $20,000 for any one accident; that the limits of liability of the insurance company were increased under the uninsured-motorist endorsement to $10,000 and $20,000 at the same time the limits under "Coverage A" were increased, and that such increase was effective prior to February 8, 1959, the date of the collision.

The judgment stated that the insurance policy and the endorsements thereon provide coverage to the plaintiffs in this accident up to $10,000 per person with a maximum of $20,000 for any one accident for both liability and uninsured-motorist coverage.

Appellant (insurance company) contends that the court erred in determining that the increased amounts ($10,000 and $20,000) for uninsured-motorist coverage were applicable at the time of the collision. Its argument is to the effect that, according to the uninsured-motorist endorsement, the amount of uninsured-motorist coverage was dependent upon the requirements of the Financial Responsibility Law and that the amount of such insurance would be the same as the amount of insurance required of an owner, for bodily injury, under

the Financial Responsibility Law; that since the 1957 amendment of that law (increasing the amounts required of an owner for bodily injury) did not become effective until July 1, 1959, the new law was not applicable on February 8, 1959, when the collision occurred, and there was no increased uninsured-motorist coverage. Appellant argues further that the policy endorsement which was sent to plaintiffs in August 1957 (i. e., the lower part of the document sent in August) increased only the insurance for bodily injury under "Coverage A," and was unrelated in uninsured-motorist coverage. It argues further that that endorsement (the lower part of the document) was unambiguous and that the court should not have given any consideration to the upper part of the document in determining the amount of uninsured-motorist insurance; that the upper part of the document was merely an explanation for sending the lower part, was in effect preliminary or contemporaneous negotiations, and was not a part of the policy but was extrinsic evidence which tended to vary the terms of the agreement; and that the matter as to an increase in the amount of uninsured-motorist coverage was dependent solely on whether the change in the Financial Responsibility Law was effective when the collision occurred.

The upper part of the document (sent in August 1957) advised plaintiffs to the effect that there was a new Financial Responsibility Law and that when it became effective they would need $10,000 and $20,000 as insurance coverage for bodily injury (under Coverage A); that there was uncertainty as to when the new law would be effective, but the company would automatically increase plaintiffs' insurance by "this notice," unless plaintiffs notified the company to the contrary; that there would be an increase in the premium rate, which charge would be included in the premium bill; and that said notice should be kept with the policy papers, "as it actually increases your protection."

Of course, if the 1957 amendment of the Financial Responsibility Law became effective in September 1957, there would be no controversy here—it is conceded that the increased uninsured-motorist coverage would have been applicable at the time of the collision. The controversy as to the effective date has arisen because there were two legislative enactments in 1957 which were in substance the same (increasing required insurance to $10,000 and $20,000), except that one enactment stated expressly that the effective date was July 1, 1959, and the other enactment did not state an effective date. In an

opinion of the Attorney General (30 Ops. Cal. Atty. Gen. 102) it was stated that the effective date was July 1, 1959. That opinion, which covers details of the legislation and discusses ably the legal principles involved, appears to be correct. The trial judge was also of the opinion that the effective date was July 1, 1959. It is not necessary, however, to determine herein the effective date of the amendment.

The trial judge found, as above indicated, that irrespective of the effective date of the new law, the limits of liability under the uninsured-motorist endorsement were increased to $10,000 and $20,000 by reason of the circumstances herein.

The judge stated in effect, in his memorandum opinion, that the conduct of the insurance company in automatically increasing the insurance for bodily injury under Coverage A simultaneously with an increase in the premium, unless advised by the plaintiffs not to do so, had the legal effect of an agreement; and that such agreement and the conduct of the parties thereunder had the legal effect of correspondingly increasing the insurance under the uninsured-motorist endorsement. He also said, in effect, therein that the policy limits prior to the agreement were the same in Coverage A as they were under the uninsured-motorist endorsement, the only difference being that under Coverage A the $5,000 and $10,000 limits were specifically spelled out, whereas in the uninsured-motorist endorsement the limits were defined as the minimum limits under the Financial Responsibility Law, which prior to its amendment were, of course, also $5,000 and $10,000; that the upper part of the document (Exhibit 4— document sent to plaintiffs in August) was patently an expression of the company's view as to the effective date of the legislative action increasing the requirements under the Financial Responsibility Law, and its probative value must be limited to the extent to which it defines the intention of the parties when the actual endorsement, the lower part of the document (Exhibit 4), was issued; that the significant part of the explanation is that by its terms it does not say categorically that the effective date of the increased requirements was September 1957; that it only says there is uncertainty in that regard and that, under certain circumstances, the effective date might be September 1957, and hence the limits of $5,000 and $10,000 were inadequate because the policy in that form did not meet the requirements of the Financial Responsibility Law; that the manifest purpose of

the increase of the monetary limits under Coverage A was to protect the plaintiffs in the event judicial or other interpretation fixed the effective date as September 1957; that the parties could fix the monetary limits of Coverage A or the uninsured-motorist endorsement in any amount they chose to fix; that it must be assumed that some portion of the increased premium, charged under Coverage A, was allocated to buttress the company against possible loss under the uninsured-motorist endorsement, with limits of $10,000 and $20,000, since the avowed basis of the increase was that lower limits were inadequate under the Financial Responsibility Law; ▇▇▇ that, in the court's opinion, the only theory upon which the company's position can be sustained is that the parties intended that the coverage under one clause of its policy, namely, Coverage A, be increased regardless of the effective date of the amendment of the Financial Responsibility Law, but as to the other coverage afforded by the same policy (namely, uninsured-motorist) the increase was to take place only after the effective date of the amendment was determined; that it seems obvious that if this was the intent of the parties the obligation rested on the insurance carrier to say so by clear and unmistakable language; that the court holds that the monetary limits of the company's liability under the uninsured-motorist endorsement were increased at the same time the monetary limits under Coverage A were increased.

The above-mentioned portion of the trial judge's opinion is adopted as a part of this court's opinion.

▇▇▇ Appellant argues, as hereinabove stated, that the upper part of the document (Exhibit 4—sent to plaintiffs in August) should not have been considered by the trial court, for the reason that there was no ambiguity in the language of the policy, and the upper part of the document was extrinsic evidence that would tend to vary the terms of the policy. It is true that the upper part of the document was not a part of the body or agreement part of the endorsement increasing the amounts of insurance under Coverage A. That part, however, does state that the plaintiffs should "Be sure to keep this notice with your [their] policy papers as it actually increases your [their] protection." That statement indicates that the company regarded the notice or upper part of the document as an important recital or preamble in connection with the endorsement increasing the amounts of insurance under Coverage A. The upper part, recital, or preamble was admissible upon the issue as to the intention of the parties in

increasing the amounts of insurance. ▮ Since the whole document was written by the company, any uncertainty therein is to be construed most strongly against the company. (See *Taylor* v. *J. B. Hill Co.*, 31 Cal.2d 373 [189 P.2d 258].) The court did not err in considering the upper part of the document (Exhibit 4). It is apparent, from a consideration of that document and the conduct of the parties—especially the conduct of the company in charging and collecting an additional premium for the uninsured-motorist coverage, that the parties intended to agree that the increased coverage would include uninsured-motorist insurance.

The judgment is affirmed.

Lillie, J., concurred.

A petition for a rehearing was denied October 16, 1962, and appellant's petition for a hearing by the Supreme Court was denied November 7, 1962.