**Shari Anne KVALHEIM, Executor of the Estate of Ruth Anne Hilmer, Deceased, Appellant,**

v.

**FARM BUREAU MUTUAL INSURANCE COMPANY, Appellee.**

**No. 54773.**

Supreme Court of Iowa.

March 16, 1972.

Alfred A. Beardmore, Charles City, for appellant.

Cartwright, Druker, Ryden & Fagg, Marshalltown, for appellee.

UHLENHOPP, Justice.

Ruth Ann Hilmer and Henry Hilmer owned a Mercury car, which they insured with defendant insurer. The loss involves Mrs. Hilmer; hence she will be treated as the owner of the Mercury and as the insured.

Defendant's policy protects various individuals as to various cars. Since Mrs. Hilmer was a named insured, no problem arises as to protection of the individual involved.

The policy has four parts plus "Additional Conditions." Each of the four parts deals with a different kind of loss. Part I grants liability protection as to personal injuries and property damages for which Mrs. Hilmer would be legally liable. It covers her legal liability caused by the Mercury and also by any car not owned by her. At the end of Part I, this appears in bold print:

> The Additional Conditions at the end of this policy apply to ALL parts of this policy.

Part II grants medical expense protection. It covers Mrs. Hilmer's medical expense caused by "an automobile"—not merely medical expense caused by the Mercury. This part also closes with the bold print that the additional conditions apply to all parts of the policy.

Part III grants physical car damage protection—fire, theft, collision, and comprehensive. It covers such damage to the Mercury and also to any car not owned by Mrs. Hilmer which is operated or possessed by her with the owner's permission. This part also ends with the bold print about the additional conditions.

Part IV grants uninsured automobile protection. This part does not relate to the Mercury. Rather, it relates to an uninsured car not owned by Mrs. Hilmer causing her personal injury or death for which the owner or operator of the uninsured car would be legally liable. An uninsured car is defined to include a hit-and-run car. Part IV likewise ends with the bold print making the additional conditions applicable.

Immediately after Part IV appear these words in large letters: ADDITIONAL CONDITIONS. Then follow several conditions, such as time coverage of the policy and payment of premiums.

Paragraph 3 of the additional conditions deals with geographic coverage of the policy. The title of paragraph 3 is in bold print and the paragraph is followed by a small map, as shown on the accompanying photocopy. Paragraph 3 states:

*The Additional Conditions at the end of this policy apply to ALL parts of this policy.*

## ADDITIONAL CONDITIONS

● **1. Policy Period and Premium Payments**

The cash premium paid is for insurance expiring at 12:01 a.m., Central Standard Time, on the premium due date shown in the Declarations which first follows the effective date shown in the Declarations. This policy shall, unless canceled, remain in full force and effect for each successive six-month period that the insured shall pay the required renewal premium in advance of its due date or within ten days after its due date. Should the insured fail to pay such cash premium in advance of its due date or within ten days after its due date as is required to renew the policy, the insurance shall no longer be in force and all cash premium paid by the insured shall be considered as fully earned and the policy terminated on its premium due date. Failure of the insured to make any required pay-

[A5609]

ment to the Company in advance of its due date or within ten days after its due date shall automatically void this policy on its premium due date without notice of cancellation or notice of any other kind.

If the insured, after failing to pay such premium in advance of its due date or within ten days after its due date, subsequently pays the same, such payment, if then accepted by the Company, shall reinstate the policy, and insurance shall be effective on the date and at the time the premium is received for a term of six months. Such date of reinstatement will establish new renewal dates on a semi-annual basis. The reinstatement of such policy and insurance and the acceptance of such payment shall not render the Company liable for any loss or damage occurring after the expiration of the six-month peri-

od at the end of which such payment was due and prior to the acceptance of such payment by the Company.

Any obligation for dividend or other credit shall not in any way extend or change the policy period.

### 2. Payment of Premium for Newly Acquired Automobile

The premium for the insurance under this policy shall be adjusted as of the date of delivery of any newly acquired automobile and the named insured shall pay any additional premium required.

### 3. Where and When the Policy Applies

This policy applies only to accidents, occurrences, and loss during the policy period while the automobile is within the United States of America, its territories or possessions, or Canada, or is being transported between ports thereof or is in Mexico within seventy-five miles of the United States boundary.

### 4. Notice of Accident, Occurrence, or Loss

In the event of an accident, occurrence or loss, written notice containing all particulars shall be given by or for the insured to the Company or any of its authorized agents as soon as practicable.

### 5. Assistance and Co-operation of the Insured

The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of the accident. If claim is made or suit is brought against the insured, he shall immediately forward to the Company every demand, notice, summons or other process received by him or his representatives. The insured shall co-operate with the Company and, upon the Company's request, attend hearings and trials, assist in making settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of any legal proceedings in connection with the subject matter of this insurance.

### 6. Insurance on Two or More Automobiles

When two or more automobiles are insured under this policy, the terms of this policy shall apply separately to each, but an automobile and an attached trailer shall be held to be one automobile as respects limits of liability under Part I of this policy, and separate automobiles under Part III of this policy, including any deductible provisions applicable to such automobile and trailer.

[A5463]

---

3. Where and When the Policy Applies

This policy applies only to accidents, occurrences, and loss during the policy period while the automobile is within the United States of America, its territories or possessions, or Canada, or is being transported between ports thereof or is in Mexico within seventy-five miles of the United States boundary.

Mrs. Hilmer went to Mexico, leaving the Mercury in Iowa. While she was near Mexico City and more than 75 miles from the United States boundary, she was killed by a hit-and-run car. Her fiduciary sued defendant insurer under Part IV of the

policy granting protection as to hit-and-run cars. The trial court rendered judgment that the loss was not covered by the policy. The fiduciary appealed.

We recently said this in Stover v. State Farm Mutual Ins. Co., 189 N.W.2d 588, 591 (Iowa):

Rule 344(f) 14, Rules of Civil Procedure, provides:

"In the construction of written contracts, the cardinal principle is that the intent of the parties must control; and except in cases of ambiguity, this is determined by what the contract itself says."

We have often said the rules for re-·lving ambiguous policies do not come .nto play unless it can fairly be said there is a real ambiguity in the terms of the policy. A strained or unreasonable construction of the language used, where there is no real ambiguity, should not be indulged in. And it is well settled that if there is no ambiguity in the contract there is no right or duty on the part of the court to write a new contract of insurance between the parties.

The provisions in the policy issued by defendant must be read in connection with the policy as a whole and in light of the declarations attached to or made a part thereof.

Applying these principles to the policy before us, we think the intent is manifest. The question, of course, is whether the loss was within the geographic coverage of the policy. Notwithstanding that the loss occurred more than 75 miles into Mexico, the fiduciary claims that the policy applied.

But so to hold would be contrary to the language of paragraph 3 of the conditions. The bold-print title of that paragraph shows the paragraph deals with where (and when) "the policy" applies. If a loss near Mexico City is covered, "the policy" is applied beyond the area which is described in paragraph 3 and shown on the map.

So to hold would also be contrary to the purpose of paragraph 3. The manifest purpose of that paragraph is to make the policy one of limited geographic application as opposed to an unlimited one. To hold that a loss is covered which occurs near Mexico City, or elsewhere beyond the area specified in paragraph 3, is to frustrate that purpose. American Cas. Co. v. Foster, 31 Misc.2d 818, 219 N.Y.S.2d 815 (loss in Italy not covered under similar policy provision).

But the substance of the fiduciary's claim is that when the Mercury was within the area specified in paragraph, the policy applied to losses occurring throughout the world. She reaches that result by reading "the automobile" in paragraph 3 as "the Mercury automobile." Several reasons, however, indicate that "the automobile" in paragraph 3 is the automobile involved in the loss in any given case.

One reason is that this is not merely a policy on the Mercury; this is truly an "automobile" policy. It covers a multitude of losses caused by a variety of cars. All four parts of the policy expressly include cars besides the Mercury—*and paragraph 3 applies to each part.*

The present loss under Part IV affords a good example. Part IV relates to losses caused by uninsured cars (including hit-and-run cars). The presence or absence of the Mercury is irrelevant to a loss under Part IV. Mrs. Hilmer might have been in a friend's car or in any other conveyance, or, for that matter, afoot. If she was injured or killed by a hit-and-run car, Part IV applied—provided the additional conditions of the policy were met.

One of those conditions was paragraph 3. *And Part IV and paragraph 3 are to be read together.* When we read Part IV, we are reading about the hit-and-run car, not the Mercury, and so when we read paragraph 3 *applied to Part IV,* we must be reading about that hit-and-run car.

The same conclusion follows under the other three parts of the policy. Part I,

granting liability protection, includes any car not owned by Mrs. Hilmer causing her legal liability. This might be a car which Mrs. Hilmer borrowed from a friend and drove. When Part I is then read, that borrowed car is the car involved under Part I, and when paragraph 3 is then read with Part I, we must be reading about that borrowed car. Part II is very broad and includes "an automobile" causing Mrs. Hilmer medical expense. If Mrs. Hilmer ran the borrowed car into the ditch and sustained medical expense as a result, "the automobile" involved would be the borrowed car. Or if she was on foot and was struck by a car, that car would be "the automobile" involved under Part II. Part III, granting physical car damage protection, goes beyond the Mercury to any car not owned by Mrs. Hilmer but operated or possessed by her with the owner's permission. If Mrs. Hilmer drove her friend's car into the ditch and damaged a fender, "the automobile" involved under Part III, and under paragraph 3 applied to Part III, would be the friend's automobile.

In this connection the fiduciary advances the claim that the words in paragraph 3, "or is being transported between ports thereof," refer to the Mercury, and that this indicates "the automobile" in paragraph 3 is the Mercury. Not at all. The car so being transported (and therefore within geographic coverage) might or might not be the Mercury. Thus, if Mrs. Hilmer borrowed a car from a friend, drove it onto a ferry for transportation from Port Angeles, Washington, to Vancouver, British Columbia, and while driving it to its location in the hold was in collision with another car there, the car "being transported" (and as to which protection would be afforded) would be the friend's car or the other car in the collision, under various parts of the policy. Under Part I (liability protection), it would be the friend's car; under Part II (medical expense), it would be either the friend's car or the other car (or if Mrs. Hilmer while on foot was struck by the other car

in the hold, the car would be that other car); under Part III (physical car damage), the car would be the friend's car; and under Part IV (uninsured automobile), the car would be the other car in the collision if that car was uninsured (and this would be true whether Mrs. Hilmer was in her friend's car or some other car or on foot in the ferry).

Another reason that "the automobile" in paragraph 3 appears to be the car involved in the loss is the essential irrelevance of the location of the Mercury if it has no connection with the loss. What practical difference does the location of the Mercury make if it is not involved?

Still another reason is that holding "the automobile" in paragraph 3 means the Mercury would nullify a number of coverages in the policy. Suppose that the Mercury broke down near Mexico City, that Mrs. Hilmer stored it there and borrowed a friend's car, and that she was in collision with a third car in the United States on the way to Iowa. If "the automobile" in paragraph 3 means the Mercury, Mrs. Hilmer would lose liability protection as to the friend's car in the case just supposed because of the location of the Mercury in Mexico, notwithstanding that Part I grants her liability protection on any car causing her legal liability. She would not have medical expense protection as to either the friend's car or the third car, notwithstanding Part II grants protection for medical expense caused by "an automobile." She would not have physical car damage protection as to the friend's car, notwithstanding Part III grants such protection as to any car not owned by Mrs. Hilmer but operated by her with the owner's permission. She would not have uninsured automobile protection if the third car was uninsured, notwithstanding Part IV grants such protection as to an uninsured car. And all this, notwithstanding that the loss occurred within the United States, where "the Policy Applies." The realities are that in any of the situations just enumerated, the courts would make short shrift of a contention by the insurer

that the location of the Mercury in Mexico prevented application of the policy to the loss. If the location of the Mercury in Mexico is not controlling in those situations, then it must not be controlling here.

We hold the loss in the instant case was not within the geographic coverage of the policy.

Affirmed.

All Justices concur except BECKER, J., MOORE, C. J., and REYNOLDSON, J., who dissent, and HARRIS, J., who takes no part.

BECKER, Justice (dissenting).

I respectfully dissent.

The majority finds the intent of the parties is manifest.[1] Thus the contract is held to be unambiguous. Of course when one takes that position there is no room for argument. But I must say the contract is certainly ambiguous to me. In fact the more one reads the contested paragraph together with the whole policy the more ambiguous the provision becomes.

I. Since the majority finds a manifest intent, no reference is necessary to principles governing ambiguous policies. If those principles were applied the case would have to be reversed.

In Central Bearings Co. v. Wolverine Ins. Co., 179 N.W.2d 443, 445 (Iowa), we reviewed rules applicable to this case:

"If the words are fairly susceptible to two interpretations the one which will sustain the insured's claim will be accepted. Thus the policy will be strictly construed against the insurer. State Auto & Cas. Underwriters by Auto. Underwriters v. Hartford Acc. & Ind. Co. (Iowa, 1969), 166 N.W.2d 761. This rule is amplified by the statement that the court should ascertain what an in-

sured as a reasonable person would understand the policy to mean, not what the insurer actually intended. Goodsell v. State Auto & Cas. Underwriters, 261 Iowa 135, 153 N.W.2d 458."

The majority's emphasis on the fact that the general provisions of the policy apply to the whole policy is unnecessary. This may be conceded. The real issue is what this particular general provision means. The majority says it means that all accidents which occur outside the territorial limits are excluded. This would be true if certain words were not present in the pertinent paragraph:

" 'This policy applies only to accidents, occurrences, and loss during the policy period ~~while the automobile is~~ within the United States of America, its territories or possessions, ~~or~~ Canada, ~~or is being transported between parts thereof~~ or ~~is~~ in Mexico within seventy-five miles of the United States boundary.' "

The paragraph *with deletions* reads as the majority would now interpret it. To achieve this result we must read several words out of the paragraph. As thus altered the provision says exactly what the insurer now says it was meant to say. But the paragraph, *as used,* says something entirely different. Application of the legal principles cited above requires reversal.

II. The same principles require reversal with the words left in. Then a modification of the word "automobile" becomes essential. Insured (to be covered) must read the word as "insured automobile". By the same token insurer (to deny coverage) must read the word as "injury-causing automobile". In either event there is an ambiguity which must be resolved in insured's favor.

III. In an effort to meet these semantic difficulties the majority touches on the nature of the insurance coverage involved in this case. It holds that uninsured motorist

---

1. The fallacy of the attempt to apply the fiction of manifestation of mutual assent or meeting of the minds to an insurance policy is nowhere better illustrated than here. Actually this isn't a contract in

the classic sense. It would be much better to treat the policy as the sale of a service or commodity. The majority rationale would look far better under this more realistic approach.

coverage (and several other coverages) actually insure every car on the road; i. e., people buy insurance *on cars they do not own*. These additional coverages are said to apply to the injury-causing cars, not to the injured individual. I submit nothing could be further from the truth. The additional coverages apply to the insured individuals, not to the uninsured cars. No one buys insurance on cars they do not own and which in fact may not yet be in existence. Rather they buy some types of insurance coverage which apply to them (or members of their families) regardless of the ownership of the injury-causing car. This point is easily illustrated by a quotation of bold-faced type on the face of the policy:

> "This new Farm Bureau Mutual Banner Policy protects MORE members of your family against MORE perils in MORE situations than ever before."

And by an excerpt from insurer's brief:

> "Under this coverage *the decedent as a named insured was covered* without regard to type, description or ownership of the automobile she would have the occasion to drive or occupy. She was covered as a driver, passenger, or pedestrian through being struck by an uninsured automobile. * * *." (Emphasis added).

This point is illustrated by another quote from insurer's brief; *"decedent as a named insured was afforded protection* when occupying or through being struck by virtually any automobile." (Emphasis added). Again, it was decedent who was insured; not "virtually any automobile". People do not buy insurance on "virtually any automobile". They buy insurance on their own automobile and additional insurance *for and on themselves* for loss due to operation of other automobiles.

This point is important because without this misconception of the nature of the coverage afforded the majority cannot read the words "injury-causing" into the contract. Such failure would be fatal.

IV. We next consider the majority explanation for the words involving "or is being transported between ports thereof." These words apply when an injury occurs and the "automobile is being transported." What automobile? A borrowed automobile? An uninsured automobile? A friend's automobile? Presumably the majority answers all in the affirmative. Is it conceivable this is what the American buying public pays its premiums for? I submit it is not.

The majority follows this with the rhetorical question "What practical difference does the location of the Mercury make if it is not involved?" This is a key question. If the coverages are *to the person* the involvement of the Mercury is immaterial. The coverage to the individual is afforded for any motor accident loss *so long as the owned car is within the limited territory*. Stated otherwise, location of the Mercury is material as limiting the coverage. What is immaterial is its role in the accident.

Does it really make sense to say to the premium-paying public that they are paying for coverage on a nonowned, uninsured motor vehicle which might hit them while being transported between ports of the United States? Isn't it much more logical to say that insured is covered if injured by a nonowned, uninsured motor vehicle even if her owned, insured automobile is being transported between ports of the United States? If this latter question is more sensibly answered in the affirmative the case must be reversed.

V. Reproduction of the map and automobile deserves some short comment. One can interpret the picture to indicate coverage *whenever the car is within the indicated territory*. On the other hand the picture can be taken to show intent to afford coverage *only if an accident occurs within the depicted territory*. In the latter case one should ask, "Why show a car, rather than an accident?" Is this nit-picking? The same policy covers accidents pictorially when it suits the draftsman's purpose.

This should not be taken as a criticism of the form of the policy used or the use of small drawings. The entire policy format is a commendable and successful attempt to clarify the contract for the lay purchaser. However, both the paragraph in question and the accompanying picture are in fact ambiguous.

It is submitted that a reasonable insurance policy purchaser, if he thought about it at all, could easily interpret the meaning of the map and the pictured car to mean that location of the car controls effectiveness of the territorial limitations. Thus the place of accident could be anywhere.

VI. Justice Holmes has said, "Upon this point a page of history is worth a volume of logic." New York Trust Co. v. Eisner, 256 U.S. 345, 349, 41 S.Ct. 506, 507, 65 L.Ed. 963, 983, 16 A.L.R. 660 (1921).

So it is here. One need not be an insurance historian to recognize that in the early days of automobile insurance policies were keyed to the owner's automobile. As the industry developed the competing companies offered medical coverage, uninsured motorist's coverage, and other such provisions relating to the person rather than the vehicle itself. Absent these newer provisions a territorial limitation keyed to the vehicle itself makes sense. When the additional coverages are added the phraseology of the territorial limitation must be changed if the company desires similar limitation. This was not done.

VII. There is only one case directly in point. It was decided by a New York trial court in American Casualty Co. v. Foster, 31 Misc.2d 818, 219 N.Y.S.2d 815 (1961). The geographic limitation clause was exactly as it appears in the instant policy except it did not include the Mexico provision. The accident occurred while the insured was driving a noninsured car in Italy; the vehicle referred to in the policy was in the United States at the time of the accident. In a very brief opinion, that court said:

"The automobile in which the insured was riding at the time of the accident was not the 'insured automobile' which it is claimed was in the United States at the time of the accident, but the 'uninsured automobile', and it is the latter vehicle which is referred to in the policy under 'Coverage G-Family Protection (Damages for Bodily Injury)', which is the clause under which the insured claims he is covered.

"Although it is true that the insurer here could have written its policy so as to obviate any possible doubt that the coverage was to apply to accidents occurring only in the United States or Canada, it is abundantly clear that that is the only logical import of the policy. Any other interpretation would be strained and illogical. * * *."

I cannot agree. It is neither strained nor illogical for policy purchasers to conclude they are afforded medical, uninsured motorist and similar coverages personal to them in situations which do not involve their owned automobile. This is what the policy says. Nor is it strained or illogical to assume this coverage relating to their persons would follow them to Mexico (or Europe) so long as their car is in the territorial area prescribed. This is also what the policy says.

I would reverse.

MOORE, C. J., and REYNOLDSON, J., join in this dissent.