[Civ. No. 34363. First Dist., Div. Three. May 30, 1975.]

UNITED SERVICES AUTOMOBILE ASSOCIATION,
Plaintiff and Respondent, v.
ARNOLD J. KRESCH et al., Defendants and Appellants.

642

## COUNSEL

Walkup, Downing & Sterns, Paul V. Melodia and Daniel J. Kelly for Defendants and Appellants.

Gassett, Perry, Frank & Bondelie and J. Joseph McDowell for Plaintiff and Respondent.

## OPINION

**DEVINE, J.**[*]—In this suit for declaratory judgment it was held that the insurance policy held by defendant Kresch does not cover the damaging event. The facts are these: While Kresch and his wife were riding in an uninsured taxicab toward an airport in Mazatlan, the cab and an uninsured truck collided head-on. Mrs. Kresch was killed, appellant was

---

[*]Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

injured. Respondent had issued to appellant a family automobile policy in which there are four coverages: I. public liability and property damage; II. expenses for medical services; III. physical damage to the vehicle (including theft); IV. protection against uninsured motorists. The question is whether coverage IV applies, the accident having occurred in Mexico, more than 75 miles from the border of California (the significance of this distance appears below).

The superior court decided that the policy does not cover the event. Because the facts are undisputed, we must make an independent determination of its meaning. (*Bareno* v. *Employers Life Ins. Co.* (1972) 7 Cal.3d 875, 881 [103 Cal.Rptr. 865, 500 P.2d 889]; *Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865-866 [44 Cal.Rptr. 767, 402 P.2d 839].)

■ The uninsured motorist part of the policy (IV) makes no reference to territorial limitation. The insurer simply agrees "to pay all sums which the insured . . . shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile. . . ." But condition 1 of the policy, which states that it applies to all parts thereof reads: "This policy applies only to accidents, occurrences and loss during the policy period while *the automobile* is within the United States of America, its territories or possessions, or Canada, or is being transported between ports thereof." [Italics supplied.] Although there are definitions in the policy of "insured automobile" and "uninsured automobile," there is none of "the automobile." Since the Kresch vehicles[1] described in the policy were in the United States at the time of the accident, the exclusion does not apply if the words "the automobile" mean the insured vehicle. Appellant contends that this is just what is meant, but that if there be ambiguity it must be resolved against the insurer. Respondent contends that, as far as uninsured motorist liability is concerned, the words "the automobile" refer to whatever uninsured automobiles were involved in the accident (the truck and the taxicab). But because such an interpretation with respect to uninsured vehicles, would, if applied to public liability (and other insurance) provide coverage in Mazatlan (and everywhere else) the insurer takes the position that the words "the automobile" mean *any* automobile—the insured automobile on the one hand, and one or more uninsured

---

[1] Two vehicles are described; by condition 4 the terms of the policy as to parts I, II and III shall apply separately to each. There is no problem of "multiplication," therefore, as to the insured vehicles by reason of the contract. But the insurer's attempt to enlarge the term "the automobile" to "any and all automobiles involved in the accident or occurrences" is something else—it is *not* within the contract.

automobiles on the other. Thus, the insurer would convert the exclusionary condition to read as if certain words were stricken thus: "This policy applies only to accidents, occurrences and loss during the policy period ~~while the automobile is~~ within the United States of America, its territories or possessions, or Canada,[2] ~~or is being transported between ports thereof.~~"

We cannot accept the insurer's proposed interpretation. The term "the automobile," without further description, strikes one immediately as referring to the one named in the policy. This is the vehicle over which insured has control. He can have protection provided he does not take this vehicle out of the United States, its territories or possessions and Canada. The policy refers, too, to exemption from the exclusionary condition when "the vehicle" is being transported between American ports, between Canadian ports, or between American and Canadian ports. This, it seems, would have reference to the *insured* automobile when it is being shipped.

Moreover, the accident may be one in which the insured is not in any vehicle; he may be a pedestrian struck by an uninsured automobile. (*Voris* v. *Pacific Indemnity Co.* (1963) 213 Cal.App.2d 29, 34-35 [28 Cal.Rptr. 328]; *Lopez* v. *State Farm Fire & Cas. Co.* (1967) 250 Cal.App.2d 210 [58 Cal.Rptr. 243].) Then there is no vehicle involved over which he has control or in which he has chosen to ride. So, if he has left his own vehicle, let us say in California, the general terms of liability are met, and the monition of the exclusionary clause has been heeded. We do not find it difficult to declare that the policy means what it seems to say.

But if there be ambiguity about which vehicle is meant, or whether "the automobile" covers more than one uninsured vehicle, the uncertainty must be resolved against the insurer. (*Gyler* v. *Mission Ins. Co.* (1973) 10 Cal.3d 216, 219 [110 Cal.Rptr. 139, 514 P.2d 1219]; *Continental Cas. Co.* v. *Zurich Ins. Co.* (1961) 57 Cal.2d 27, 32 [17 Cal.Rptr. 12, 366 P.2d 455].)

This is so especially where exclusions and limitations are involved. These must be conspicuous,[3] plain and clear. (See *Steven* v. *Fidelity &*

---

[2]The analysis of the insured's contention by this display of eliminations was made in the dissenting opinion in *Kvalheim* v. *Farm Bureau Mutual Insurance Co.* (Iowa 1972) 195 N.W.2d 726 at page 731.

[3]It is possible that condition No. 1 could be held inapplicable on the single ground that it is not conspicuous. It is in fine print as is most of the rest of the policy which is a

*Casualty Co.* (1962) 58 Cal.2d 862 [27 Cal.Rptr. 172, 377 P.2d 284]; *Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 271 [54 Cal.Rptr. 104, 419 P.2d 168].) This rule was applied to a territorial limitations clause in *Harris* v. *Glens Falls Ins. Co.* (1972) 6 Cal.3d 699, 701 [100 Cal.Rptr. 133, 493 P.2d 861]. Again and again the courts have inveighed against careless draftmanship of contracts of insurance. (See *Bareno* v. *Employers Life Ins. Co., supra,* at p. 878.) Perhaps the words "the automobile" were simply carried over from earlier public liability policies; but uninsured motorist insurance has been an obligatory part, except by written agreement, since 1961 (Ins. Code, § 11580.2) and the policy before us was issued some 11 years later. To have written the exclusion in the form given above wherein certain words were stricken (or in similar expression) would have been an exceedingly simple thing to do. To accomplish the result which such a change would have effected may have been what the insurer intended, but the test is not what the insurer intended or wishes it had done, but what coverage a reasonable layman might expect from the policy. (*Steven* v. *Fidelity & Casualty Co., supra,* 58 Cal.2d 862, 871.)

■ But, says the insurer, an endorsement of the policy relating to coverage in Mexico clearly and without ambiguity limits the coverage. This endorsement reads: "It is agreed that the coverage provided by the policy, except Uninsured Motorists coverage, to which this endorsement is attached is extended to apply while the automobile insured is being used for occasional trips into that part of the Republic of Mexico lying not more than 75 miles from the boundary line of the State of California and not more than 25 miles from the boundary line of any other state of the United States of America for a period not exceeding 10 days at any one time." Preliminarily it must be said that insofar as this endorsement might be interpreted by some readers (policyholders, claims agents and even lawyers) as excluding uninsured motorists coverage *within* the 75 miles, the provision has been held contrary to the public policy of the State of California in *Mission Ins. Co.* v. *Brown* (1965) 63 Cal.2d 508 [47 Cal.Rptr. 363, 407 P.2d 275]. It is the policy of this state expressed in section 11580.2 of the Insurance Code to protect the insureds for this type of coverage in the same territory as that covered by public liability insurance. Since the *Mission Ins. Co.* case was decided in 1965 and the policy in the instant case was issued in 1972, the endorsement could be

---

lengthy document and no reference to it is contained in the body of part IV. But we know of no case in which lack of conspicuousness alone has voided such a provision. However, the fact that the condition is not given prominence is to be considered together with the subject of ambiguity.

very misleading as to the true coverage containing as it does the invalid provision and relating this with particularity to California. It is incongruous that the company relies in part on the void provision as retained in its policy as demonstrating noncoverage in the present case.

But apart from the rather embarrassing situation in which the company finds itself, its position in respect of the endorsement is not sound. The words "except uninsured motorists" do not necessarily imply that this coverage purportedly is limited to the United States, Canada, etc. They may be taken when considered with the broad expression of coverage in part IV as implying that other coverage is extended for the 75 miles while the unlimited uninsured motorist coverage remains unaltered. In *Southwestern Funding Corp.* v. *Motors Ins. Corp.* (1963) 59 Cal.2d 91 [28 Cal.Rptr. 161, 378 P.2d 361], there was a combination of the same territorial clause as appears in the present policy with an endorsement extending coverage 50 miles into Mexico. The policy also contained a provision that the interest of a lienholder should not be impaired by any breach of condition of the policy. The latter clause was held to take precedence over the territorial exclusion insofar as a lienholder was concerned. The court said of Aetna, the insurer, "Aetna can, of course, find no comfort in the 'Mexican Coverage' endorsement which, as commented in footnote 1, *ante,* serves to liberalize the coverage of the policy, rather than to limit it."

More particularly, let it be noted that in the endorsement reference is made to coverage while "the automobile insured" is on "occasional trips." This applies neatly to public liability, property damage, theft and physical damage insurance, but it does not measure up to uninsured motorists coverage because in this field the insured person may be in a public conveyance (as the Kresches were), on a horse, on a bicycle or afoot. An uninsured automobile involved in the accident killing or injuring an insured may be one in which the insured is riding or may be another vehicle colliding with, or as in the present case, both vehicles may meet the description. The "extension" endorsement obviously refers to an insured vehicle on an occasional trip. The "extension" is not convertible to a diminution.

To be sure, the court in the *Mission Ins. Co.* case regarded the "extension" as an attempted enlargement of liability coverage without a corresponding augmentation of uninsured motorist coverage, but the court was not considering coverage beyond 75 miles; the accident occurred within that distance. The insured was not concerned with what

coverage existed beyond.[4] The question in that case was one of public policy as derived from statute; here it is one of contractual liability. The insurer by contract may assume a liability in respect of uninsured motorists beyond that required by statute. (Eisler, Cal. Uninsured Motorists Law Handbook (2d ed. 1974) Conflicts between Statute and Policy Provisions, § 1.10, p. 11; *Kirby* v. *Ohio Cas. Ins. Co.* (1965) 232 Cal.App.2d 9, 13 [42 Cal.Rptr. 509]; *White* v. *Farmers Ins. Exchange* (1962) 207 Cal.App.2d 667 [24 Cal.Rptr. 755].)

If it be said that the language of the endorsement is of doubtful interpretation, still under the authorities cited above, the doubt must be resolved against the insurer.

But it is argued that an interpretation of the policy which would provide worldwide coverage is strained. Here we must distinguish our case from the cases which hold that a strained meaning must not be given to the *statute,* section 11580.2 of the Insurance Code, which imposes liability for uninsured motorist coverage. (See *Robinson* v. *State Farm Mut. Auto. Ins. Co.* (1972) 23 Cal.App.3d 953, 958-960 [100 Cal.Rptr. 565] and cases cited therein.) The interpretation of a *contract* of insurance is made by the different rules stated above. Of course, a construction which the layman policyholder could not reasonably have believed to have created an asserted liability might be too "strained" to allow coverage. But here we find nothing forced about the interpretation which is in favor of the insured. The layman, were he to read the policy before purchase (admittedly, a rather fictional supposition, but one which must be taken into account by us and certainly should be by the insurer) might well believe that his coverage against uninsured motorists is worldwide, with these facts in mind: 1) the all-inclusive part IV as to territory (in the absence of limitation therein), and the murky territorial exclusion, relating to "the automobile," as explained above; 2) the evident desire of the insurer to escape *third party liability,* with its heavy obligations (in this case, coverage was up to $300,000) for public liability by provision that *the automobile* must be in the United States, its possessions or Canada (or on *brief trips* to Mexico); 3) the particular nature of uninsured motorist coverage; it has a personal element about it

[4]The policy in the *Mission Ins. Co.* case plainly excluded coverage beyond the 75 miles. The general covering provision for uninsured motorist insurance in that policy was this: "This endorsement applies only to accidents which occur on and after the effective date hereof, during the policy period and within the United States of America, its territories or possessions, or Canada." (8501 Records of Supreme Court.) There is no reference in the *Mission Ins. Co.* policy to location of any automobile; the *accident* must occur within the designated area, enlarged by the 75-mile provision.

(it follows the insured even while he is walking) quite apart from the vehicular ownership or vehicular operation, which characterize public liability and damage-to-vehicle coverage; 4) the fact that the company covers all manner of bodily injury damages (although to a limited amount) all over the world in this same automobile policy, giving evidence that the insurer does not regard unlimited territorial coverages impossible or "strained." Moreover, the reader might notice that the wording even in the bodily injury coverage endorsement is this: "The insurance . . . applies to bodily injury sustained any place in the world while the owned automobile is within the United States of America, its territories or possessions, or Canada, or is being transported between ports thereof." If this means anything, it signifies that the insurer will allow geographically unlimited coverage for a coverage which is essentially personal; but only while the "automobile" is within designated territory. The reason again, may be to avoid public liability exposure (or it may be for no reason except poor draftmanship which cannot affect the rights of the insured).

Finally the few cases in which the same territorial limitation was present may be considered. In *Farmers Ins. Exch.* v. *Harmon* (1974) 42 Cal.App.3d 805 [117 Cal.Rptr. 117], the insured, Harmon, was sued for personal injury arising from his driving of an unowned vehicle in Mexico 800 miles south of the border. It was held that Farmers Insurance Exchange, the insurer, had not provided public liability coverage because the condition (the same as the one in our case) making reference to "the automobile" was clearly applicable to automobiles insured whether these vehicles were owned or nonowned. (There is a vigorous dissent which would have held the insurer by interpreting the reference to the automobile as applying only to the one described in the policy.) Since in the *Farmers* case "the automobile" means an *insured* vehicle (the court said "this is clear, certain and unambiguous") when public liability insurance is concerned, it would be unreasonable to allow an insurer to prevail in its contention that the reference is to *uninsured* vehicles when a case arises under the uninsured motorist part of the policy.

In *Farmers* the majority was impressed by the warning contained in the policy (a warning required by Ins. Code, § 11580.2) that despite the public liability coverage within 75 miles, the insured may spend many hours or days in jail if he does not have insurance from a company licensed under the laws of Mexico. This warning appears in the policy in the case before us, but, of course, the reader would construe the

admonition as applying to those parts of the policy which protect other persons than the insured in Mexico. The reader would not deem the warning to apply to uninsured motorist coverage which provides personal protection to the insured and which would be of no concern to the Mexican authorities. A warning to carry personal accident insurance would be relevant, but, of course, no such warning appears. Indeed, the suggestion to provide other coverage useful for the protection of third persons would have the effect of assuring the reader that he need not have additional insurance for uninsured motorist damages.

In a brief trial court opinion, *American Casualty Company* v. *Foster* (1961) 31 Misc.2d 818 [219 N.Y.S.2d 815], it was held that even the damages for bodily injury did not apply to an accident in an uninsured automobile in Italy because of the same condition. The court acknowledged in its brief opinion that the insurer could have written its policy so as to obviate any possible doubt but concluded that the interpretation contained by the insured would be strained and illogical. Nothing more is said.

In *Kvalheim* v. *Farm Bureau Mutual Insurance Co., supra,* 195 N.W.2d 726, a sharply divided Supreme Court of Iowa gave to the condition an interpretation in favor of the insurer. There were differences in the form of the policy from that before us: The condition was expressed in strikingly bold print (which was reproduced in the opinion), unlike the modest lines in the present policy; there was specific reference, itself in bold print, in part IV, the uninsured motorist section, to the applicable conditions, whereas in the present policy, there is no reference at all in the insuring part to any territorial limitation; and finally, in *Kvalheim* the policy displayed an arresting display of a map which shows an automobile straddling the United States and Canada, but not touching Mexico.

But we find not only these distinctions in the forms of the two policies. We are in disagreement with the reasoning of the majority in *Kvalheim* which found that there was no ambiguity in the terms of the policy. "The automobile," the court held, is the automobile involved in any given case. The difficulty about this is that although it may be what the insurer intended to say, it is not what the insurer said in the policy. The majority in *Kvalheim* said that it made no practical difference where the insured vehicle was if it was not involved in the accident. In the first place it is not necessarily so because, as we have stated above, a reader may well interpret the policy as showing concern on the part of the insured that

the insured vehicle be kept within certain boundaries in order to avoid the heavy exposure of public liability insurance and as we have seen, an insurer, Farmers Insurance Exchange, succeeded in avoiding this exposure. In the second place it is not the duty of the policyholder to ask himself whether there is a practical difference. If the words are at best ambiguous he need not seek an interpretation which is against his coverage and look for reasons to support such a construction. In the third place, as was pointed out in the dissent in *Kvalheim*, uninsured motorist coverage has a personal characteristic about it which goes beyond the coverage in the early days of automobile insurance when policies were keyed to the owned automobile. As the industry developed competing companies have offered medical coverage and other provisions including uninsured motorist coverage, the last of which is in part required by statute, but may by contract as with any other coverage, be extended beyond that compelled by law.

The judgment is reversed with directions to the trial court to render judgment in accordance with the views expressed herein.

Draper, P. J., and Scott, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied August 13, 1975.