[Civ. No. 25330. Third Dist. Feb. 21, 1986.]

CALIFORNIA STATE AUTOMOBILE ASSOCIATION,
INTER-INSURANCE BUREAU, Petitioner, v.
THE SUPERIOR COURT OF SAN JOAQUIN COUNTY, Respondent;
FRED GODINEZ et al., Real Parties in Interest.

COUNSEL

Toy, Coleman & Davies and David E. Davies for Petitioner.

No appearance for Respondent.

Carlos M. Alcala, Wilcoxen & Callahan, Daniel E. Wilcoxen and H. Vincent McLaughlin for Real Parties in Interest.

OPINION

BLEASE, J.—At issue is whether an automobile insurance policy provision which extends coverage to events happening between the ports of the United States, its possessions, territories, and Canada applies to an automobile accident occuring during a vacation trip in Mexico. The answer is no.

FACTS

Real party Fred Godinez is an insured under two automobile policies issued by the California State Automobile Association, Inter-Insurance Bureau (CSAA). On February 4, 1983, Godinez and real party Cavazos left Stockton, California, on a trip to Mexico. As they characterized it, they were on a "trip which contemplated travel between Tucson, Arizona, and Calexico, California, with stops in Mexico to visit relatives and to see a horse race." Some of the relatives live in Altar, Mexico; others live in the Mexicali, Mexico and Calexico, California area. At some point in the trip they intended to travel to Calexico and Mexicali. After visiting relatives there, they intended to return to Altar to meet Godinez' wife on her return

from Guadalajara. The horse race was to take place on Sunday, February 6, 1983, in Caborca, a town about 20 miles west of Altar.

They flew to Tucson, where they were met by Godinez' nephew, Reyes Moraga. After leaving Tucson on Friday afternoon, February 4, 1983, they intended their first stop to be Altar. With Moraga at the wheel, the trio proceeded in Moraga's vehicle. They left the United States at Nogales, Arizona, and traveled on Highway 2 towards Altar. Near Altar they collided with a tractor trailer rig. Godinez and Cavazos suffered severe head injuries. Neither Moraga's vehicle nor the tractor trailer rig was insured.

Cavazos filed a personal injury action naming CSAA and Godinez as defendants. Godinez tendered the defense of the action to CSAA. Although not entirely clear from the record, it appears that Cavazos' claim is based on the liability provisions and Godinez' claim on the uninsured motorist provisions of the policies. Cavazos attempts to place the accident under the umbrella of the liability portions of the policy by contending that Moraga's vehicle was a "replacement car" which Godinez was temporarily using on the trip. Under the policy, the "insured car" includes a car "temporarily used as a substitute for . . . [a] vehicle [covered by the policy] . . ., because of its withdrawal from normal use due to breakdown, repair, servicing, loss or destruction."

CSAA filed this action seeking a declaration that it has no obligation to Godinez under the policies by virtue of provisions limiting coverage to specified territories. It filed a motion for summary judgment (Code Civ. Proc., § 437c) which was denied on the ground that a term of the policies limiting coverage to occurrences "between the ports" of the United States is ambiguous. CSAA then sought extraordinary relief in this court. We issued an alternative writ of mandate.

## DISCUSSION

As has most recently been reaffirmed, the "[c]onstruction of the policy . . . is controlled by the well-established rules on interpretation of insurance agreements. . . . ' "[A]ny ambiguity or uncertainty in an insurance policy is to be resolved against the insurer and . . . if semantically permissible, the contract will be given such construction as will fairly achieve its object of providing indemnity for the loss to which the insurance relates. . . ." (citations omitted.)' " (*White* v. *Western Title Ins. Co.* (1985) 40 Cal.3d 870, 881 [221 Cal.Rptr. 509, 710 P.2d 309], quoting from *Reserve Insurance Co.* v. *Pisciotta* (1982) 30 Cal.3d 800, 807-808 [180 Cal.Rptr. 628, 640 P.2d 764]; see also *Crane* v. *State Farm Fire & Cas.*

*Co.* (1971) 5 Cal.3d 112, 115 [95 Cal.Rptr. 513, 485 P.2d 1129, 48 A.L.R.3d 1089]; *Holz Rubber Co., Inc.* v. *American Star Ins. Co.* (1975) 14 Cal.3d 45, 55 [120 Cal.Rptr. 415, 533 P.2d 1055, 79 A.L.R.3d 518]; *Gray* v. *Zurich Ins. Co.* (1966) 65 Cal.2d 263, 271 [54 Cal.Rptr. 104, 419 P.2d 168].) ██ ██ ██ ██ This rule applies when there is a material uncertainty in the application of the policy language to the facts upon which the claim of coverage is predicated.[1] (See *Foremost Insurance Co.* v. *Eanes* (1982) 134 Cal.App.3d 566, 571 [184 Cal.Rptr. 635].) The construction favoring the insured must be *"semantically permissible."* (*White, supra,* at p. 881, italics added.)

██ How then should we determine whether the claimed application is semantically permissible? ██ "We must read [the policy] as employing the ordinary usages of its terms as they might be understood by the layman in the context of the policy and the purposes which it serves." (*Travelers Indemnity Co.* v. *Swearinger* (1985) 169 Cal.App.3d 779, 784 [214 Cal.Rptr. 383]; see *Reserve Ins. Co.* v. *Pisciotta, supra,* 30 Cal.3d at p. 807.)

██ The purpose of an automobile insurance policy is to indemnify for injury occasioned by automobile accidents and for damage to an insured automobile. ██ The uninsured motorist provisions implicated here state that CSAA "will pay damages for bodily injury [legally recoverable from the uninsured motorist] . . . caused by [an] accident . . . aris[ing] out of the ownership maintenance or use of the uninsured motor vehicle." The liability provisions state CSAA "will pay damages . . . for which any insured person is legally liable because of bodily injury and property damage arising out of the ownership, maintenance or use of a car . . . ."

This coverage is limited by the provisions at issue. "This policy applies only to . . . accidents, occurrences and losses happening within the United States, its territories or possessions, or Canada or between their ports."[2]

---

[1] It has been said that "language which might be considered ambiguous as applied to some circumstances is not necessarily ambiguous per se." (*Herzog* v. *National American Ins. Co.* (1970) 2 Cal.3d 192, 189, fn. 5 [84 Cal.Rptr. 705, 465 P.2d 841].) The statement may mislead. The meaning of language is to be found in its applications. An indeterminacy in the application of language signals its vagueness or ambiguity. An ambiguity arises when language is reasonably susceptible of more than one application to material facts. There cannot be an ambiguity per se, i.e. an ambiguity unrelated to an application. (See *Foremost Insurance Co., supra,* 134 Cal.App.3d at p. 572.)

[2] It is of historical interest that CSAA's territorial limitation provision has undergone modification. At one time it said: " 'This policy applies only to accidents, occurrences and loss during the policy period while *the automobile* is within the United States of America, its territories or possessions, or Canada, or *is being transported* between ports thereof.' "

CSAA argues that in this context "ports" refers to seaports. Real parties claim that "ports" also refers to "ports of entry." So read, they say, the policy covers the accident in which they were injured because it happened in Mexico while traveling between two ports of entry of the United States, Nogales, Arizona, and Calexico, California.

Neither Nogales nor Calexico is a seaport. They are designated as ports of entry for purposes of customs and tariffs. (19 U.S.C.A. § 2, Annex A to Tariff Schedules of the United States, Schedule "D"; see Ballentine's Law Dict. (3d ed. 1969) p. 963.) "'[P]ort,' . . . may include any place from which merchandise can be shipped for importation, or at which merchandise can be imported." (19 U.S.C.A. § 232.)

These concerns have nothing to do with the purposes served by policies of automobile insurance. In the context of the provision for territorial limitation port has to do with places within the covered domains between which transportation, giving rise to the risks of automobile "accidents, occurrences and losses", might happen. The covered domains are the United States, its possessions, territories, and Canada. Coverage is extended only "between *their* ports." Since Mexico is not a covered domain, travel between the United States and Mexico is not covered.

Real parties argue that "between their ports" applies to travel between two places in the United States over land outside the United States. That is not a permissible reading. Land travel between two places located within the United States is subsumed by the provisions covering accidents happening *within* the covered domains. The only other circumstance in which travel might occur between two such places is travel on or over water between such places. Travel over domestic waters is travel within the United States, considering it to include its territorial waters. That leaves only travel on or over international waters as the subject of "between their ports", a necessary condition for transportation between certain states of the United States and between the United States and its possessions or territories. Giving "port" its broadest permissible reading within the policy limits it to a sea-

---

(Orig. italics & italics added.) This provision was at issue in *United Services Automobile Assn.* v. *Kresch* (1975) 48 Cal.App.3d 640, 643 [121 Cal.Rptr. 773]. The policyholder was injured while riding in an uninsured taxi cab in Mexico and sought coverage under the uninsured motorist provisions of his policy. The court read "automobile" to mean insured automobile. So read, the words of limitation did not apply, oddly enough, "[s]ince the Kresch vehicles . . . were in the United States at the time of the accident . . . ." (*Ibid*; fn. omitted.)

CSAA, probably reacting to this decision, modified the words of limitation to exclude reference to "automobile" and to the transportation of an automobile. That led to the semantic difficulties assayed in this case.

port or other place within a covered domain from which such travel over international waters might occur. That did not happen here.

Real parties' claimed application of the policy language to the accident in which they were injured is not semantically permissible. They could not reasonably have expected coverage under the policy during their vacation visit to Mexico. (See *Foremost Insurance Co.* v. *Eanes, supra,* 134 Cal.App.3d at p. 572; cf. *Peerless Insurance Co.* v. *Sun Line Helicopters, Inc.* (Fla. 1965) 180 So.2d 364.) There is no uncertainty or ambiguity to be resolved in their favor.

## II

■ Cavazos further claims that, the territorial limitation notwithstanding, CSAA is estopped from denying coverage under the policy. He asserts that Godinez, a sales representative for CSAA, assured him that the policies would be effective while they were in Mexico. He claims he detrimentally relied on Godinez' representations and that Godinez had actual or ostensible authority to act for CSAA.

Estoppel is an affirmative defense which is not tendered unless specially pleaded. (*Fair Oaks Bank* v. *Johnson* (1926) 198 Cal. 196, 201 [244 P. 335]; *Estate of Pieper* (1964) 224 Cal.App.2d 670, 691 [37 Cal.Rptr. 46]; 5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 1044, p. 460.) Estoppel was not pleaded in the answer to CSAA's complaint for declaratory relief. It was not incumbent upon CSAA, as the plaintiff moving for summary judgment, to negate an affirmative defense not made.

### DISPOSITION

Let a peremptory writ of mandate issue directing the superior court to vacate its order denying CSAA's motion for summary judgment and directing it to enter a new order granting the motion. The alternative writ is discharged. Upon this decision becoming final the stay previously issued is vacated.

Evans, Acting P. J., concurred.

SIMS, J.—I concur with issuance of the writ and with nearly all of the majority opinion. However, I think "port" means "seaport" and does not mean some "other place within a covered domain from which . . . travel over international waters might occur." (Majority opn., p. 860, *ante.*)

"Words used in an insurance policy are to be interpreted according to the plain meaning which a layman would ordinarily attach to them." (*Reserve Insurance Co.* v. *Pisciotta* (1982) 30 Cal.3d 800, 807 [180 Cal.Rptr. 628, 640 P.2d 764].) A "port" is "a place where ships may ride secure from storms . . . ." (Webster's Third New Internat. Dict. (1981) p. 1767.) As the majority correctly show, "port of entry" is a term given special significance in the law of tax and tariffs. "Port" is not a common abbreviation of "port of entry." A layman would not think "port" means "port of entry," nor, in my view; would a layman think a "port" is some place from which travel over international waters might occur, unless there is a harbor for ships there.

Petitions for a rehearing were denied March 18, 1986, and the petitions of real parties in interest for review by the Supreme Court were denied June 18, 1986.