[Civ. No. 2434. Fifth Dist. Feb. 9, 1976.]

HENRY CHAKMAK et al., Plaintiffs and Appellants, v.
H. J. LUCAS MASONRY, INC., Defendant and Respondent.

COUNSEL

Fullerton, Lang & Richert and Philip C. Fullerton for Plaintiffs and Appellants.

John W. Larson and Daniel C. Bowen for Defendant and Respondent.

OPINION

THOMPSON, J.*—Plaintiffs and appellants herein appeal from a judgment entered in favor of defendant and respondent after the granting of a motion for summary judgment.

The facts of this case properly may be termed a classic "bar examination" type.

Plaintiffs Henry Chakmak and Vincent Palmo comprised a general partnership operating under the fictitious name of Tri-Central Construction Company; the partnership performed general construction in the San Joaquin Valley area. Defendant was engaged in masonry work exclusively in the San Francisco Bay area. By a purely coincidental set of circumstances the Board of Trustees of the California State Universities advertised for bids for the construction of student health centers at the California State University campuses at Hayward and Fresno; the bids were to be opened at the same time. The construction plans for each center were entirely separate as were the bidding procedures.

As far as may be gleaned from the pleadings and the various affidavits filed in support of and against defendant's motion for summary

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

judgment the following described undisputed "once in a million" events occurred.

Defendant masonry contractor noted in an edition of the Construction Weekly of the Contra Costa Builders Exchange, a trade journal, that Tri-Central was listed as a possible bidder on the construction of the California State University at Hayward health center. Defendant's estimator examined the plans on file at the Contra Costa Builders Exchange for the construction of the Hayward health center and made an estimate of $95,000 to his employer as an appropriate bid for the subcontracting of the masonry work. On June 26, 1972, defendant noted, Tri-Central still was listed in the Construction Weekly of the Contra Costa Builders Exchange as a possible bidder upon the *Hayward* health center job and that the bid opening would be at 2 p.m. on June 27, 1972.

In the meanwhile, Tri-Central, as a general contractor, was preparing to enter a bid on the construction of the student health center at California State University at Fresno. At no time did Tri-Central intend to bid upon the Hayward student health center; the inclusion of Tri-Central in the trade journal as a bidder on the *Hayward* project was an error.

Acting upon the information in the Construction Weekly of the Contra Costa Builders Exchange, defendant's president, Harry J. Lucas, on June 27th, began telephoning the contractors listed as bidders on the *Hayward* project. At approximately 1:30 p.m. he contacted, by telephone, the office of Tri-Central in Fresno and informed its agent that defendant's bid was $95,000 on the "student health center." In this telephone conversation, neither Mr. Lucas nor Tri-Central's employee mentioned the project as being the *Hayward* or *Fresno* student health center; Mr. Lucas believed that Tri-Central knew that he was talking about the *Hayward* project and Tri-Central believed that Mr. Lucas was talking about the *Fresno* student health center as that was the only project Tri-Central was bidding on.

Tri-Central incorporated the bid of defendant in its bid on the Fresno student health center. When the Fresno bids were opened Tri-Central was the low bidder, and on August 11, 1972, it officially was notified by the Board of Trustees of the California State Universities that its bid had been accepted. On August 16, 1972, Tri-Central notified defendant by letter that a formal contract shortly would be forwarded to finalize the

acceptance of defendant's low bid on the masonry work at the *Fresno* student health center. Defendant immediately telephoned Tri-Central of the misunderstanding and confirmed it by letter dated August 22, 1972. This letter further advised Tri-Central that defendant would not perform any masonry work on the job at Fresno.

Tri-Central then engaged the second low bidder to perform the masonry work for the sum of $103,434.

Thereafter plaintiffs filed a complaint in two causes of action seeking as damages the $8,434 difference between what it cost them to perform the masonry work and defendant's bid. The first cause of action alleged a breach of an oral agreement based upon defendant's refusal to perform in accordance with the oral bid it submitted to Tri-Central and the second cause of action sounded in promissory estoppel. In its answer defendant generally denied plaintiffs' allegations and alleged by way of an affirmative defense that no contract existed because of a lack of mutual consent and that if a contract had existed, defendant had given prompt notice of rescission.

Defendant subsequently filed a motion for summary judgment under the provisions of section 437c of the Code of Civil Procedure which was supported by affidavits generally reciting the facts we heretofore have summarized. Plaintiffs filed counteraffidavits, which did not recite any facts which have not been set forth heretofore. The court granted defendant's motion and ordered plaintiffs' complaint dismissed; plaintiffs have appealed from the judgment entered.

■ Since the issues raised by the parties were resolved by the trial court in a hearing on a motion for summary judgment our first consideration must be whether the requirements for a motion for summary judgment were met. Not only must the affidavits and counteraffidavits present no triable issue of fact (*Coyne* v. *Kremples* (1950) 36 Cal.2d 257, 261 [223 P.2d 244]), the moving party's affidavits must contain facts sufficient to entitle him to judgment in his favor (*Hardy* v. *Hardy* (1943) 23 Cal.2d 244, 245 [143 P.2d 701]). ■ Thus, if the affidavits in support of defendant's motion do not state facts establishing every element of its defense, the motion must be denied. (*McIvor* v. *Savage* (1963) 220 Cal.App.2d 128, 133 [33 Cal.Rptr. 740].)

Defendant does not dispute that it telephoned a bid to Tri-Central and that plaintiffs accepted the bid and relied upon it to their detriment. It is

readily apparent that defendant in its seeking the granting of a motion for summary judgment, and the court in granting it, relied virtually exclusively upon the defense asserted that no obligation existed between the litigants herein because of a lack of mutual consent which negated the existence of a contract.

■ ■ When concerned with the essential elements of consent a careful distinction must be made between a consent that is not free because it was obtained by duress, menace, fraud, undue influence or mistake (Civ. Code, §§ 1565, 1567) and a consent that is not mutual because the parties did not agree upon the same thing in the same sense (Civ. Code, §§ 1565, 1580). (See 1 Williston on Contracts (3d ed. 1957) § 20, pp. 35-36.) In the situation where the consent is not free the contract is not absolutely void, but may be rescinded by the parties. (Civ. Code, § 1566.) In the situation where the consent is not mutual, it generally is stated there is no contract. (*German Sav. and Loan Soc.* v. *McLellan* (1908) 154 Cal. 710, 716 [99 P. 194]; *Carlson, Collins, Gordon & Bold* v. *Banducci* (1967) 257 Cal.App.2d 212, 222 [64 Cal.Rptr. 915].)

In discussing the various problems involved with mistake in the expression of assent, Professor Corbin has stated the following concerning a situation, like the one involved in the present case, where each party misunderstands the expression of the other: "An offer is made in terms that the offeree misunderstands; and the latter accepts in terms that the former understands as an assent to the offer that he meant to make. In a case like this, each party is mistaken as to the meaning of the other; and sometimes this is not discovered until after important changes of position have taken place. It is very clear that no contract should be held to exist unless one of the parties so negligently expressed himself that the other was caused reasonably to believe that agreement existed." (3 Corbin on Contracts, (rev. ed. 1960) § 599, p. 593; see also Rest., Contracts, § 501, com. b, p. 961.)

■ It is not controverted that defendant was mistaken in its belief that Tri-Central was seeking bids for the masonry work for the student health center project at California State University at Hayward and submitted its bid based upon that misapprehension. However, defendant's affidavits in no way resolve the issue as to whether its president in expressing himself was so negligent as to cause plaintiffs reasonably to believe that agreement existed. Defendant admits that it in no way advised Tri-Central that it was presenting a bid for the Hayward project. In the absence of evidentiary facts which could be presented at a trial

upon this issue we are unable to say that such a failure to advise when coupled with knowledge that the bid would be relied upon, did not constitute an act of negligence which would cause plaintiffs reasonably to believe that agreement existed. This aspect of the case becomes especially critical in that it was known to defendant that the presentment of a bid by a general contractor is preceded by a frenetic rush of last minute subcontractor bids.[1] Therefore, it appears a triable issue of fact was unresolved by the affidavits presented upon the motion for a summary judgment.

The judgment is reversed.

Brown (G. A.), P. J., and Franson, J., concurred.

---

[1] For a general discussion as to the reasons why this frenetic rush occurs and why general contractors are placed ". . . in the position of having all they can do to record the bids, prepare their own written bid and get them filed by the deadline" see *Saliba-Kringlen Corp.* v. *Allen Engineering Co.* (1971) 15 Cal.App.3d 95, 100 [92 Cal.Rptr. 799].