[Civ. No. 39915. First Dist., Div. One. Apr. 10, 1978.]

JOHN F. ROBLES et al., Plaintiffs and Appellants, v.
CALIFORNIA STATE AUTOMOBILE ASSOCIATION,
Defendant and Respondent.

## COUNSEL

Lew Warden for Plaintiffs and Appellants.

Knox, Ricksen, Snook, Anthony & Robbins and Stephen S. Harper for Defendant and Respondent.

## OPINION

**SIMS, J.*—**Plaintiffs have appealed from an order and judgment granting the motion for summary judgment of defendant insurer and awarding the defendant its costs and disbursements. Plaintiffs allegedly suffered injuries as a result of a collision in Mexico involving the Robles' Volkswagen bus and an alleged hit and run uninsured motorist. The policy did not cover travel in Mexico. Plaintiffs sought: (1) reformation

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

of the policy; (2) submission of their claims to arbitration; (3) $30,000 damages for failure to furnish coverage in Mexico, as requested; (4) and (5) $30,000 damages for failure to reform the policy, $5,000 each for emotional distress and $100,000 exemplary damages.[1]

Plaintiffs concede that at the time of the application the defendant insurer was not the principal of the producer of the insurance, who allegedly failed to apply for requested insurance which would cover travel in Mexico. They assert that there is a triable issue of fact as to whether the insurer by its participation in the California assigned risk plan, and its issuance of a policy of insurance, assented to the producer being its agent in matters respecting the policy after its issuance. They also contend that any territorial limitation of uninsured motorists coverage to eligible policy holders is void and contrary to public policy. Since whatever authority the producer had, as an agent of the insurer after the policy was issued, would be in connection with the policy as issued and forwarded to him, the producer could only be the agent of the insured in seeking reformation. There is no triable issue of fact as between the plaintiffs and the insurer. Nor is there any requirement that the coverage be issued in the form asserted by plaintiffs. The judgment must be affirmed.

In connection with the motion for summary judgment the defendant incorporated portions of the deposition of the plaintiff John F. Robles, the applicant for the insurance, and filed the declarations of the defendant Callahan, who procured the insurance for Robles, and the declaration of an underwriter of the insurer which is supplemented with

---

[1]The plaintiffs refer to the pleadings at great length. In reviewing the summary judgment, however, we are governed by principles examined in *Cornelison* v. *Kornbluth* (1975) 15 Cal.3d 590 [125 Cal.Rptr. 557, 542 P.2d 981], as follows: "Plaintiff contends that the court erred in granting summary judgment because the 'complaint is regular on its face and raises issues of fact.' ... [¶] It is clear to us that plaintiff gravely misunderstands the purpose and function of summary judgment procedure. The same contention now made by plaintiff was rejected by this court 25 years ago in a unanimous opinion by Chief Justice Traynor in the leading case of *Coyne* v. *Krempels* (1950) 36 Cal.2d 257, 262 .... We there said: 'In effect, it is contended that a motion for summary judgment cannot be granted unless the pleadings of the party opposing the motion are insufficient to state a cause of action or defense, for under defendant's contention a sufficient pleading raises a triable issue of fact requiring the denial of the motion. [¶] So construed, section 437c would be meaningless. "It is not the purpose of the procedure under section 437c to test the sufficiency of the pleadings." (*Eagle Oil & Ref. Co.* v. *Prentice,* 19 Cal.2d 553, 560 [122 P.2d 264].) ... The procedure for the entry of a summary judgment provides a method by which, if the pleadings are not defective, the court may determine whether the triable issues apparently raised by them *are real or merely the product of adept pleading.*' (Italics added.)" (15 Cal.3d at pp. 595-596.)

copies of pertinent documents, including sections of the California Administrative Code in effect June 1, 1971, concerning the assigned risk plan. (Cal. Admin. Code, tit. 10, ch. 5, subch. 3, art. 8, § 2400 et seq., hereafter Rules and Regulations.) Plaintiffs countered with extracts from the deposition of another client of defendant Callahan,[2] the declaration of their attorney, and the declaration of plaintiff John F. Robles. ██ ██▮█ From the foregoing the following facts appear.[3]

Robles contacted Callahan about a week before he signed the application for insurance, because friends told him that Callahan knew the needs of Mexican-Americans for insurance. Robles told Callahan that he wanted the kind of insurance his friends had been getting, which covered them for travel into Mexico. Callahan said he was taking care of Robles' friends, and he would take care of him. They talked about travelling in Mexico, and Callahan told Robles he did not have to worry, his insurance covered travel in Mexico. Callahan gave Robles a business card which indicated he was a representative of State Farm insurance. He secured collision insurance, represented by a policy and a little book, from State Farm Automobile Insurance Company. According to Robles, State Farm paid off voluntarily when it ascertained the facts of the case, although its policy omitted to provide for travel to Mexico. Robles paid Callahan $180 for uninsured motorist, collision and liability insurance with State Farm. A week later Callahan told him that because he had two tickets he was going to have to place some insurance through the California Automobile Assigned Risk Plan. On that occasion Callahan filled out a paper and Robles signed it.

---

[2]This deponent stated that Callahan had told him he was only covered within 25 miles of the border. Robles' testimony that the accident occurred 35 kilometers or 21.7 miles from the border was also incorporated in the opposition to the motion. In the absence of anything to show that the other applicant applied for or received the same type of insurance as Robles, the former testimony is irrelevant with respect to the issues raised by the insurer's motion.

[3]"Summary judgment is proper only if the affidavits in support of the moving party would be sufficient to sustain a judgment in his favor and his opponent does not by affidavit show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue." (*Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785]. See also, generally *Cornelison* v. *Kornbluth, supra,* 15 Cal.3d 590, 595-596; *Eagle Oil & Ref. Co.* v. *Prentice* (1942) 19 Cal.2d 553, 555-556 [122 P.2d 264]; *Chakmak* v. *H. J. Lucas Masonry, Inc.* (1976) 55 Cal.App.3d 124, 128 [127 Cal.Rptr. 404]; *Whitney's at the Beach* v. *Superior Court* (1970) 3 Cal.App.3d 258, 267-269 [83 Cal.Rptr. 237]; and *Petersen* v. *City of Vallejo* (1968) 259 Cal.App.2d 757, 775-776 [66 Cal.Rptr. 776].) We, accordingly, disregard the declarations of Callahan, which are contradicted by Robles, and state the facts as they appear from the declarations filed on behalf of plaintiffs, as augmented by uncontradicted statements in defendant insurer's proof.

On December 11, 1971, Robles signed an application to the California Automobile Assigned Risk Plan in which Callahan is named as the producer of record. Except as may be implied from the assignment of that application to the defendant insurer, Callahan was not and had never been a representative, agent, salesman or broker for the defendant insurer, and he never represented to Robles that he was. The application indicated that the applicant accepted uninsured motorist coverage, and that although he had had no other automobile liability insurance in the previous three years, he had tried and failed to obtain liability insurance in California within the preceding 60 days. Callahan collected $151 and forwarded it and the application to the assigned risk plan. Admittedly (since he denied any such discussion with Robles), Callahan did not communicate or represent that Robles was interested in or requested automobile liability, including uninsured motorist insurance coverage, for travel into or for accidents that might occur in Mexico, as part of the policy to be issued under the assigned risk plan.

On December 13, 1971, the administrator of the plan forwarded the application and $151 which had been submitted with the application to the defendant insurer, with instructions that coverage should be effective at 12:01 a.m. the following day. (See Rules and Regulations, §§ 2444 and 2444.5.) The insurer issued its policy covering the period from December 14, 1971, to December 14, 1972, covering $15/30,000 bodily injury liability, $15/30,000 uninsured motorist liability, and $5,000 property damage liability for a total premium of $164. Part VIII of the "Insuring Agreements" reads: "POLICY PERIOD, TERRITORY, PURPOSES OF USE: This policy applies only to accidents, occurrences and loss during the policy period, while the automobile is within the United States of America, its territories or possessions, or Canada, or is being transported between ports thereof and, if a 'described automobile' under Insurance Agreement IV, is owned, maintained and used for the purposes stated as applicable thereto in the declaration." A similar clause is found in the uninsured motorist endorsement. The policy contained cover material which referred to personalized claim service, "in the United States and Canada" through the AAA, and graphically depicted a map of California and Nevada, and a second map of the United States and Canada, where there were AAA offices.

Callahan received notice of the assignment of the policy to defendant insurer, and admittedly, as producer of record, received a commission of 10 percent, as provided in subdivision (b) of section 2462 of the applicable Rules and Regulations. After the accident, Callahan told

Robles he did not know what kind of coverage Robles had been given until he discussed his claim with the defendant insurer.

Robles apparently thought all his insurance was with State Farm. He was not certain that he received the defendant insurer's policy before the accident occurred, but if he did he put it with his other papers. On September 23, 1972, the accident occurred in Mexico. Robles acknowledged he never had any communication with the insurer or its representatives, nor did Callahan mention that insurer or represent that he was its agent at any time prior to the accident. After the accident, Callahan told Robles he was covered and referred him to the insurer's claims office. There for the first time he learned that he was not covered.

The attorney for the plaintiffs ascertained on May 20, 1976, upon making inquiry, that defendant insurer did not issue automobile insurance policies covering travel in Mexico, but that it could arrange for such insurance at charges which varied with the type of car and length of stay in Mexico.

I

■ We first address plaintiffs' assertion that any territorial limitation of uninsured motorist coverages to eligible policyholders is contrary to public policy. The policy behind the statute, Insurance Code section 11580.2, has been fully set forth as follows: "A liberal construction must be given to statutes providing compensation for those injured on the highway through no fault of their own [citations], and the Uninsured Motorist Law is a statute of this class and is to be interpreted liberally. [Citations.] [¶] Section 11580.2 of the Insurance Code is one facet of the entire financial responsibility law [citation], and is 'designed to give monetary protection to that ever changing and tragically large group of persons who while lawfully using the highways themselves suffer grave injury through the negligent use of those highways by others.' (*Continental Cas. Co.* v. *Phoenix Constr. Co.,* 46 Cal.2d 423, 434. . . .) ■ An insurance policy is governed by the relevant statutory law in force at the time the policy is issued; such provisions are read into the policy and become a part of the contract [citations]; this rule is applicable to section 11580.2 of the Insurance Code. [Citation.] [¶] Consequently, as a matter of public policy, every bodily injury motor vehicle liability policy issued or delivered in this state should provide uninsured motorist coverage [citations], and the provisions of the statute are part of every policy of insurance to which it is applicable, to the same effect as if it was written

out in full in the policy itself. [Citations.]" (*Modglin* v. *State Farm Mut. Automobile Ins. Co.* (1969) 273 Cal.App.2d 693, 698-699 [78 Cal.Rptr. 355]. See also *Mission Ins. Co.* v. *Brown* (1965) 63 Cal.2d 508, 510 [47 Cal.Rptr. 363, 407 P.2d 275]; *Borders* v. *Great Falls Yosemite Ins. Co.* (1977) 72 Cal.App.3d 86, 96-97 and 98 [140 Cal.Rptr. 83]; *United Services Automobile Assn.* v. *Kresch* (1975) 48 Cal.App.3d 640, 645 [121 Cal.Rptr. 773]; *Robinson* v. *State Farm Mut. Auto. Ins. Co.* (1972) 23 Cal.App.3d 953, 957 [100 Cal.Rptr. 565]; and *Allstate Ins. Co.* v. *Smith* (1970) 9 Cal.App.3d 898, 902 [88 Cal.Rptr. 593].)

In *Mission Ins. Co.* v. *Brown, supra,* the policy included a clause reading, " 'MEXICO COVERAGE—LIMITED—It is agreed that the coverage provided by this policy is extended to apply while the automobile insured is being used for occasional trips into that part of . . . Mexico lying not more than 75 miles' from the United States border for a period not exceeding 10 days." (*Id.,* p. 509.) The uninsured motorist endorsement read, as does the clause in this case, " 'This endorsement applies only to accidents which occur . . . within the United States of America, its territories or possessions, or Canada.' " (63 Cal.2d at p. 509.) The opinion answers "Yes" to the question, "Is the purported territorial limitation in the endorsement void because it is in conflict with section 11580.2 of the Insurance Code?" (*Id.*) That broad general statement is qualified by the following general reasoning of the court. It stated, "There is no express provision in section 11580.2 as to the territorial area within which the insured must be protected against damage caused by an uninsured vehicle. The section, however, was designed to minimize losses to the people of California, who are involved in accidents with uninsured or financially irresponsible motorists, and it would appear that the public policy of this state, as expressed in said section, requires that the insured be protected against damages for bodily injury caused by an uninsured motorist *in the same territory in which the policy covers him for liability.*" (*Id.,* p. 510, fn. omitted, italics added.) Here the coverage in the endorsement is coterminous territorially with the coverage of the policy, which, as quoted above, is similarly limited.

We note that in *United Services Automobile Assn.* v. *Kresch, supra,* 48 Cal.App.3d 640, the court construed the endorsement in a manner in which, the insurer complained, "would provide worldwide coverage." (48 Cal.App.3d at p. 647.) Neither section 11580.2 statute, nor the right to have a territorial exclusion under it were involved. The court pointed out that the uninsured motorist part of the policy made no reference to territorial limitation. It found that neither the general condition, similar

to that found in the policy in this case, nor the existence of an express endorsement granting liability coverage in Mexico, limited in territory and time, served to qualify the general coverage of the uninsured motorist provisions (*id.,* pp. 644-646). The court acknowledged that the clause in the uninsured motorist provision in the *Mission Ins. Co.* case plainly excluded coverage beyond the 75 mile limit which public policy imposed upon it by reason of the general liability coverage. (*Id.,* p. 647, fn. 4.) It stated: "The question in that case was one of public policy as derived from statute; here it is one of contractual liability. The insurer by contract may assume a liability in respect of uninsured motorists beyond that required by statute." (*Id.*) The case, therefore, inferentially recognizes that the insurer may territorially limit coverage in the uninsured motorist endorsement as long as it is coextensive with the bodily injury liability insurance coverage of the policy.

That the statute requires no more, is indicated by the omitted footnote in the above quotation from the *Mission Ins. Co.* case, where the court stated, "The section contains some provisions from which it could conceivably be inferred that it is concerned only with accidents in California, but none of such provisions are conclusive. For example, the section requires that in certain cases a report of an accident be made within a specified time to the police department of the city where the accident occurred, or if the accident occurred in unincorporated territory, either to the sheriff of the county where the accident occurred or 'the local headquarters of the California Highway Patrol.' " (63 Cal.2d at p. 510, fn. 1.) This view is confirmed by examination of the provisions of section 11580.2 in force at the time the policy was issued. (Stats. 1971, ch. 1564, § 4, p. 3137, eff. Nov. 17, 1971.) The section then and now provides, in the event of insolvency of the insurer, for modification of the limitation provisions found in subdivisions (b) and (i) "in the event the accident occurs in any other state or foreign jurisdiction *to which coverage is extended under the policy* . . . ." (§ 11580.2, subd. (j), italics added.)

As it bears on the case, where the assigned risk plan is involved, the Legislature, in authorizing the approval or issuance of plans, provided in part, ". . . Insofar as possible, assignments under the plan shall be consistent with the scope of territorial operations and underwriting policies of each subscriber." (§ 11621.) The plan may not require issuance of a policy affording coverage in excess of the amounts required by the financial responsibility law. (§ 11622. See Veh. Code, § 16056, and former §§ 16023 and 16059; Rules and Regulations, § 2445.1.)

Under the plan in effect in 1971, section 2407 provided: "STANDARD COVERAGE TO BE AFFORDED. All applicants assigned under the Plan shall be afforded uniform coverage equivalent to the Basic Automobile Liability Form, Fifth Revision thereof, dated April 1, 1955, as contained in the Standard Provisions for Automobile Liability Policies, except that Medical Payments Coverage shall be amended by a prescribed Automobile Medical Payments—Other Insurance Endorsement, and restrictive endorsements shall not be employed unless approved by the Governing Committee and not be in defeasance of the purposes of the Plan and the statute under which it is approved and issued."

Section 2408 read: "UNINSURED MOTORIST PROTECTION. If the vehicle to be insured is principally used or principally garaged in this state, such policy shall include the uninsured motorist protection required by Insurance Code Section 11580.2. However, such protection may be excluded if the only coverage with respect to the use of any motor vehicle is limited to the contingent liability arising out of the use of non-owned motor vehicles, or if the insurer and any named insured have agreed in writing to delete such protection."

We find nothing in the provisions of sections 11580, 11580.1, or 11580.2, or the provisions of the financial liability law contained in the Vehicle Code (§§ 16000-16075, former §§ 16000-16110), which requires the compulsory furnishing of liability insurance or uninsured motorists coverage extending extraterritorily into Mexico. Insurance Code, section 11580.05, which refers to the foregoing, provided and provides in part: "The Legislature declares that the public policy of this state in regard to provisions authorized or required to be included in policies affording automobile liability insurance or motor vehicle liability insurance issued or delivered in this state shall be as stated in this article, that this article expresses the total public policy of this state respecting the content of such policies, . . ."

Since the policy provisions and the provisions of the uninsured motorist endorsement are clear, and the insurance involved is one mandated by law, we are not disposed to extend the coverage as proposed by plaintiffs. (See *Borders* v. *Great Falls Yosemite Ins. Co.*, *supra*, 72 Cal.App.3d 86, 98; and *Robinson* v. *State Farm Mut. Auto. Ins. Co.*, *supra*, 23 Cal.App.3d 953, 956-961.)

■ We conclude that there is no statute or public policy requiring the insurer to extend the uninsured motorist coverage under the assigned risk policy to liability for accidents occurring in Mexico.

## II

■ Plaintiffs do not contend that Callahan had the authority to bind the assigned risk insurer prior to the issuance of the policy. They do assert that when the insured "voluntarily" joined the assigned risk plan, it assented to its being designated by the manager of the plan as the insurer with Robles as its insured. As the insurer points out joinder in the plan is not voluntary. It is required of every insurer admitted to transact liability insurance who is transacting automobile bodily injury and property damage liability insurance. (See Ins. Code, §§ 11620, 11621 and 11625; and Rules and Regulations, § 2405.)

In *Nipper* v. *California Auto. Assigned Risk Plan* (1977) 19 Cal.3d 35 [136 Cal.Rptr. 854, 560 P.2d 743], the nature of the plan is outlined as follows: "The assigned risk plan at issue was created pursuant to section 11620 et seq. The history of the plan's operation, and its change in character from voluntary to compulsory, are well documented and have left clear tracks. (See *Cal. State Auto. etc. Bureau* v. *Downey* (1950) 96 Cal.App.2d 876, 880-887. . . .) The general purpose of the plan was to provide automobile insurance for those marginal motorists who, because they were considered 'bad risks,' were otherwise unable to secure and maintain such insurance. [Citations.] These persons included 'violators of traffic laws, . . . persons with minor physical disabilities, the young and the old drivers, and, of course, those who had bad accident records.' (*Cal. State Auto.*, *supra*, at pp. 881-882.) To this extent the plan complements the state's financial responsibility laws by providing a limited fund of insurance to compensate persons injured by drivers who otherwise would be uninsurable." (19 Cal.3d at p. 41.)

The insurer does not deny that it was required to insure the applicant in accordance with the application forwarded to it by Callahan. It did so, and as we have seen, it was not required on the basis of that application, or any statute, regulation or public policy, to furnish either liability insurance or uninsured motorist coverage for accidents occurring in Mexico. It is not otherwise contended that the policy as issued did not fulfill the terms of the application and the law and applicable rules and regulations.

Plaintiffs further contend that the designation of Callahan as the "producer" is equivalent to a designation by the manager of the plan that Callahan was the agent of the assigned company in all matters *thereafter* relating to the insurance company, and that the defendant insurer gave its assent thereto when it voluntarily joined the assigned risk plan and thereafter issued the policy. "No company can be compelled to assume a risk. But if it refuses to accept an assigned risk, its right to do business in this state may be terminated." (*Cal. State Auto. etc. Bureau* v. *Downey* (1950) 96 Cal.App.2d 876, 899 [216 P.2d 882] [affd. *California Auto. Assn.* v. *Maloney* (1951) 341 U.S. 105, 110-111 (95 L.Ed. 788, 793, 71 S.Ct. 601)].) It is quite another thing to say that in administering the assigned risks the insurer must rest upon the discretion of agents which it plays no part in selecting.

It is established that the producer has no authority to bind the assigned insurer by any representation that the insured is covered, before a policy is issued, because there is no principal designated to cover the risk until it is assigned by the manager of the assigned risk plan. (See *Interinsurance Exchange* v. *Garrett* (1975) 46 Cal.App.3d 368, 372-373 [120 Cal.Rptr. 216]. Cf. *Granco Steel, Inc.* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 191, 198 [65 Cal.Rptr. 287, 436 P.2d 287].)

Plaintiffs claim that, even so, since Callahan had knowledge that Robles wanted coverage in Mexico, he was negligent in not examining the policy issued by the assigned insurer, and in seeking reformation of that policy when it was first issued, or at some time before the accident happened, and that the assigned insurer is vicariously liable for that negligence because it issued the policy on an application forwarded by Callahan. Even if we assume that Callahan is in some way the agent of the insurer, in matters relating to the coverage and risk assigned to the insurer, the plaintiffs syllogism breaks down. The furnishing of liability insurance and attendant uninsured motorist coverage in Mexico was not one of the matters assigned to or assumed by the insurer as principal.

It may be true that the insurer does on occasion secure for its insureds coverage for travel in Mexico. The fallacy in plaintiffs' reasoning is exposed by supposing that Callahan on receiving the policy had requested such coverage of the company. There was no contractual, statutory or public policy engendered rule which would have required the insurer to furnish that coverage.

No opinion is expressed as to plaintiffs' rights against Callahan if they establish their factual contentions. It is clear that the assigned insurer, having fulfilled its legal obligation, is not vicariously liable for the misfeasance, if any, of the producer.

The judgment is affirmed.

Elkington, Acting P. J., and Kelly, J.,* concurred.

A petition for a rehearing was denied May 9, 1978.

*Assigned by the Chairperson of the Judicial Council.