[No. F018132. Fifth Dist. Apr. 8, 1993.]

KARI ANN CRAFT, Plaintiff and Appellant, v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
Defendant and Respondent.

**[Opinion certified for partial publication.†]**

---

†Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I and III.

**COUNSEL**

Chain, Younger, Lemucchi, Cohn & Stiles and Timothy J. Lemucchi for Plaintiff and Appellant.

Daniels, Baratta & Fine and Linda A. Schweitz for Defendant and Respondent.

## OPINION

MARTIN, Acting P. J.— ■■ ■ Plaintiff insured appeals from an order denying her petition to compel arbitration of uninsured motorist claim. (Code Civ. Proc., § 1294, subd. (a); Ins. Code, § 11580.2, subd. (f).)[1]

### FACTS

In 1989, plaintiff and her grandfather, Bryson Russell, purchased a 1987 Mazda pickup truck. On April 7, 1989, Russell contacted Steven Kennedy, a State Farm agent in Taft, California, and applied for insurance on the pickup truck. State Farm issued insurance policy No. 861 7569-D07-75, to Russell and plaintiff as named insureds. The policy period ran from April 7, 1989, through October 7, 1989, and provided bodily injury and property damage liability coverage. When Russell applied for the policy, he executed a California uninsured motor vehicle coverage rejection form. That form expressly rejected and deleted such coverage from the policy of insurance. (Ins. Code, § 11580.2, subds. (a), (m).)

On March 26, 1990, Russell transferred his ownership interest in the vehicle to plaintiff. In conjunction with this transfer, Russell contacted Agent Kennedy to change the policy over to plaintiff as the sole named insured. On April 5, 1990, State Farm issued policy No. 861 7569-D07-75B with plaintiff as the sole named insured. The policy provided coverage only for property damage and bodily injury liability. Plaintiff never executed a written waiver or rejection of uninsured motor vehicle coverage in conjunction with the issuance of either policy.

Plaintiff renewed policy No. 861 7569-D07-75B for a six-month period, effective October 7, 1990. On December 26, 1990, plaintiff was involved in a vehicular accident with defendant Christina Bennett, an uninsured motorist. Plaintiff was driving her pickup truck westbound on State Route 119 when she was struck by a 1984 Ford Bronco operated by Bennett. Bennett was traveling northbound on Harrison Street in Taft when the accident occurred. Plaintiff sustained fractures and permanent scarring in the accident.

On March 14, 1991, plaintiff filed claim No. 75-8753-174 with defendant State Farm. She sought uninsured motorist benefits under the policy for injuries arising out of the accident. In response to the claim, State Farm

---

[1]An order denying a petition to compel arbitration is appealable. (*Boys Club of San Fernando Valley, Inc.* v. *Fidelity & Deposit Co.* (1992) 6 Cal.App.4th 1266, 1270, fn. 1 [8 Cal.Rptr.2d 587].)

maintained there had been a waiver of uninsured motorist coverage and denied benefits.

Between March 14 and December 17, 1991, counsel for the parties corresponded frequently concerning the claim and rejection of coverage. On July 3, 1991, defense counsel provided plaintiff a copy of the declarations page from policy No. 861 7569-D07-75B. That page indicated the lack of uninsured motor vehicle coverage. The lower left corner of the page stated, "REPLACED POLICY." On September 23, 1991, plaintiff received a copy of the waiver signed by Russell in connection with issuance of policy No. 861 7569-D07-75. Russell had executed the waiver on April 7, 1989.

On December 17, 1991, plaintiff made a formal demand for arbitration pursuant to the provisions of policy No. 861 7569-D07-75B. On March 25, 1992, plaintiff filed a petition in Kern County Superior Court to compel arbitration of uninsured motorist claim.

On or about April 22, 1992, State Farm filed a formal response to the petition. State Farm argued the second policy was a continuation or renewal of the original policy and Russell's original waiver remained binding upon plaintiff. To support this position, State Farm submitted the declaration of claim superintendent Gordon Loo. Loo averred the second policy number was the same as the original, except for the suffix "B." According to Loo, this suffix signified the deletion of Russell as a named insured.

On April 30, 1992, counsel for the parties argued the matter before the Honorable Stephen P. Gildner, judge of the superior court. Plaintiff contended the two policies were distinctive in that there was a change in both the policy number and the named insured. State Farm argued the only difference in the two policies was the deletion of Russell as a named insured. The insurer maintained the second policy was a renewal or continuation of the original policy and Russell's original waiver continued to bind plaintiff under the second policy. The trial court ruled from the bench and denied the petition to compel arbitration.

On May 11, 1992, plaintiff filed a motion to reconsider the petition to compel arbitration (Code Civ. Proc., § 1008). Plaintiff alleged "a new and different set of facts" demonstrating the policy in force at the time of the subject accident was not a renewal or continuation of the original policy. Plaintiff specifically sought opportunity to present the testimony of agent Steven Kennedy as to the nature of the new policy. Defendant maintained the waiver was effective regardless of the characterization of the second policy as a continuation, renewal or replacement of the original policy.

On June 1, 1992, the court conducted a contested hearing on the motion for reconsideration. However, the court refused to entertain the testimony of Steven Kennedy. In response, plaintiff offered to prove (1) a new policy had issued to plaintiff and (2) Kennedy had mistakenly failed to discuss uninsured motorist coverage with plaintiff at the time of the issuance of the second policy. Defendant objected to Kennedy's testimony on the ground of the best evidence rule (Evid. Code, § 1500). After oral argument the court took the matter under submission.

On June 2, 1992, the court denied plaintiff's motion to reconsider by minute order. Plaintiff filed a timely notice of appeal from "the denial of plaintiff's Petition to Compel Arbitration of Uninsured Motorist Claim."

## DISCUSSION

### I*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### II

 Plaintiff also contends the effectiveness of her grandfather's original deletion agreement did not extend to what she describes as the second insurance policy.

Plaintiff argues:

"[A] waiver of uninsured motorist coverage will be effective only when the insured intentionally and informatively relinquishes his or her right to such coverage.

"In the instant case, appellant never entered into an agreement deleting such coverage. The original insured who signed a deletion agreement (i.e., Russell) is not a party to the insurance contract between appellant and respondent which was in effect at the time of the subject accident. Thus, the trial court's ruling essentially has allowed a stranger to the contract to dictate the terms of coverage. Such a result is completely at odds with the . . . authorities which require an informed and voluntary waiver by the named insured."

Insurance Code section 11580.2, subdivision (a) states in relevant part:

"(1) . . . The insurer and any named insured, prior to or subsequent to the issuance or renewal of a policy, may, by agreement in writing, in the form

---

*See footnote, *ante*, page 1284.

specified in paragraph (2) or paragraph (3), (1) delete the provision covering damage caused by an uninsured motor vehicle completely, or (2) delete the coverage when a motor vehicle is operated by a natural person or persons designated by name, or (3) agree to provide the coverage in an amount less than that required by subdivision (m) but not less than the financial responsibility requirements specified in Section 16056 of the Vehicle Code. *Any of these agreements by any named insured or agreement for the amount of coverage shall be binding upon every insured to whom the policy or endorsement provisions apply while the policy is in force, and shall continue to be so binding with respect to any continuation or renewal of the policy or with respect to any other policy which extends, changes, supersedes, or replaces the policy issued to the named insured by the same insurer, or with respect to reinstatement of the policy within 30 days of any lapse thereof.*" (Italics added.)

Insurance Code section 11580.2, subdivision (a)(2) sets forth the mandatory language of an "[a]greement . . . to delete the provision covering damage caused by an uninsured motor vehicle completely or delete the coverage when a motor vehicle is operated by a natural person or persons designated by name." Insurance Code section 11580.2, subdivision (a)(3) sets forth the mandatory language of an "[a]greement . . . to provide coverage in an amount less than that required by subdivision (m)" of the statute. In the instant case, Russell signed a coverage rejection form which incorporated both the "complete deletion" language of subdivision (a)(2) and the "reduced coverage" language of subdivision (a)(3). Russell marked a block on the form which certified: "I have the option to reject and delete all Uninsured Motor Vehicle Coverage (Coverage U & U1) and I request such deletion." ■ An agreement to waive uninsured motorist coverage is insufficient if it does not contain the prescribed statutory language. However, that insufficiency is only prima facie evidence of an ineffective waiver of coverage. The resulting presumption is subject to rebuttal by evidence of an intentional relinquishment of a known right after knowledge of the facts. (*Hartman* v. *Progressive Casualty Ins. Co.* (1988) 204 Cal.App.3d 1073, 1081-1082 [251 Cal.Rptr. 714].) Russell's selection of the "complete deletion" block on the form would effectively rebut any presumption of ineffective waiver.

■ Plaintiff concedes any named insured may effectively delete uninsured motorist coverage for all insureds under the policy. Moreover, she acknowledges "the deletion agreement signed by Russell would have been effective to delete uninsured motorist coverage under the original policy." However, she submits the deletion agreement was not binding upon her when the subsequent policy was issued exclusively in her name. Plaintiff

concedes this issue has not been the subject of any reported judicial decision. She nevertheless maintains a careful reading of the applicable statute supports her position:

"In discussing who may agree to a deletion of coverage, the Legislature uses the phrase 'any named insured'. The Legislature also uses this same phrase when discussing who will be bound by such a deletion agreement. It is clear from this language that the Legislature envisioned the possibility of multiple named insureds existing in a single policy. Despite the legislative awareness of this possibility, the Legislature limits the effectiveness of such agreements to subsequent policies issued to 'the' insured by the same insurer. The only reasonable explanation for using the phrase 'the' instead of 'any' is that the Legislature was referring to a particular named insured, namely the one who signed the deletion agreement.

"Accordingly, a deletion agreement will be effective as to a subsequent policy only when the insured who signs the deletion of coverage is also a named insured in the second policy. Under this interpretation of the statute, the deletion agreement, not having been signed by appellant, is no longer effectual since the second policy was not issued to the named insured who deleted U.M. coverage (i.e., Bryson Russell)."

█ In ascertaining the Legislature's intent in drafting the uninsured and underinsured motorist provisions of Insurance Code section 11580.2, we must first turn to the words of the statute itself. █ Where the statute is clear, courts will not interpret away clear language in favor of an ambiguity that does not exist. Legislation should be construed so as to harmonize its various elements without doing violence to its language or spirit. Wherever possible, potentially conflicting provisions should be reconciled in order to carry out the overriding legislative purpose as gleaned from a reading of the entire act. A construction which makes sense of an apparent inconsistency is to be preferred to one which renders statutory language useless or meaningless. (*Hartford Fire Ins. Co.* v. *Macri* (1992) 4 Cal.4th 318, 326 [14 Cal.Rptr.2d 813, 842 P.2d 112].)

█ Public policy favors compensation for innocent casualties of the dangerous enterprise of negotiating California highways. California courts are required to construe the uninsured motorist statute (Ins. Code, § 11580.2) in favor of coverage wherever possible. Any doubtful language in the statute should be resolved in favor of the insured. However, the principle of liberal interpretation should not be applied to give a forced construction or one which inserts a requirement not contained in the statute where the statute is clear in the context of the factual situation. (*Ahern* v. *Dillenback* (1991) 1

Cal.App.4th 36, 44 [1 Cal.Rptr.2d 339]; *Borders* v. *Great Falls Yosemite Ins. Co.* (1977) 72 Cal.App.3d 86, 97-99 [140 Cal.Rptr. 33].) ■ And, as previously stated, an insurance policy is governed by the relevant statutory law in force at the time the policy is issued. Such provisions are read into the policy and become a part of the contract. This rule is applicable to Insurance Code section 11580.2 and the provisions of the statute are part of every insurance policy to which it is applicable. (*Robles* v. *California State Auto. Assn.* (1978) 79 Cal.App.3d 602, 608-609 [145 Cal.Rptr. 115].)

■ The instant case turns on one sentence in Insurance Code section 11580.2, subdivision (a):

"Any of these agreements [deleting or reducing the amount of uninsured motorist coverage] by any named insured . . . shall be binding upon every insured to whom the policy or endorsement provisions apply while the policy is in force, and shall continue to be so binding . . . with respect to any other policy which extends, changes, supersedes, or replaces the policy issued to the named insured by the same insurer . . . ." The "named insured" means only the individual(s) or organization named in the declarations of the policy of motor vehicle bodily injury liability insurance referred to in Insurance Code section 11580.2, subdivision (a). If the named insured is an individual, the term "insured" means the named insured, his or her spouse, relatives of either who reside in the same household, and heirs, among others. (Ins. Code, § 11580.2, subd. (b).)

Prior to 1984, the waiver agreement mentioned in Insurance Code section 11580.2, subdivision (a) was binding when the policy was renewed or replaced. Effective January 1984, the Legislature expanded the binding effect of the waiver agreement to any other policy issued by the same insurer that extends, changes, or supersedes the policy. (*Review of Selected 1983 California Legislation* (1984) 15 Pacific L.J. 411, 647-648.) Plaintiff submits, "the Legislature's use of the definitive article 'the' in the [phrase 'the named insured'] indicates an intent to limit the effectiveness of such agreements to situations where the subsequent policy is issued to the same insured who had previously signed the deletion agreement."

We find no support for plaintiff's argument in this regard in the legislative history of Insurance Code section 11580.2 et seq., in the published cases or in logic. In plaintiff's view, a deletion agreement remains effective only where (1) the named insured on a policy executes the agreement; (2) the same insurer extends, changes, replaces, or supersedes that policy with another; and (3) the named insured on the subsequent policy is the same as the named insured on the earlier or initial policy. This interpretation effectively negates or eliminates any authority or control or any voice in the

selected or rejected coverage by any insured under the policy other than the one who initially applied for the policy and personally signed the application and/or waiver. In our view, the phrase "issued to the named insured by the same insurer" modifies only the second mention of the word "policy." In this construction, a deletion agreement remains effective where (1) any named insured on a policy executes the agreement and (2) the same insurer extends, changes, replaces, or supersedes that policy with another to any of the original named insureds, whether or not the named insured who executed the waiver remains as an insured under the policy. If the only change in the policy is dropping or deleting from policy coverage and protection the named insured who executed the waiver, then, without more, the waiver continues in effect as to the remaining named insured(s). The phrase "issued to the named insured by the same insurer" logically refers to the initial policy rather than the subsequent policy.

In the instant case, defendant State Farm issued policy No. 861 7569-D07-75 to Bryson Russell and Kari Ann Craft, as named insureds, for the period April 7, 1989, to October 7, 1989. On April 7, 1989, Bryson Russell signed a form rejecting and deleting all uninsured motor vehicle coverage under that policy. Plaintiff concedes the rejection/deletion agreement was effective as to policy No. 861 7569-D07-75. On March 26, 1990, State Farm deleted Russell from the policy at his request and changed/superseded/replaced that policy with policy No. 861 7569-D07-75B. The declarations page of that policy listed plaintiff as the sole named insured. In our view, the April 7, 1989, deletion agreement continued to be binding on plaintiff with respect to the "75B" policy because the latter changed/superseded/replaced the "75" policy, a policy which had been issued to the name insured, Bryson Russell and plaintiff Kari Ann Craft, by the same insurer, defendant State Farm. Plaintiff contends this interpretation is incorrect because her grandfather is not a named insured on the "75B" policy. However, Insurance Code section 11580.2, subdivison (a)(1) does not require the subsequent policy to have the same named insured. Rather, the statute continues the binding effect of the deletion agreement where the same insurer issues a subsequent policy to extend/change/supersede/replace the earlier policy issued to the named insured.

Plaintiff contends the language of the statute should nevertheless be resolved liberally in her favor. ■ However, the principle of liberal construction of uninsured motorist provisions should not be applied to give a forced construction or one which inserts a requirement not contained in the statute. (*Ahern* v. *Dillenback*, *supra*, 1 Cal.App.4th 36, 44.) ■ Plaintiff also contends "a waiver of uninsured motorist coverage will be effective only when the insured intentionally and informatively relinquishes his or her

right to such coverage." However, the cases which plaintiff cites for this proposition were decided many years before the enactment of the version of Insurance Code section 11580.2 applicable here. (*Members Ins. Co.* v. *Felts* (1974) 42 Cal.App.3d 617, 622 [117 Cal.Rptr. 54]; *Dufresne* v. *Elite Insurance Co.* (1972) 26 Cal.App.3d 916, 923-924 [103 Cal.Rptr. 347].)

In our view, a logical construction of the statutory language supports the continued binding effect of the deletion agreement with respect to the subsequent policy. Plaintiff's arguments to the contrary must be rejected.

III*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The order denying petition to compel arbitration is affirmed. Defendant and respondent is awarded costs on appeal.

Ardaiz, J., and Harris, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 22, 1993. Mosk, J., was of the opinion that the petition should be granted.

*See footnote, *ante,* page 1284.