Celia CHARLIN, Plaintiff,

v.

ALLSTATE INSURANCE CO.; Donoyan Insurance Agency; Does 1 to 20 inclusive, Defendants.

No. CV–98–3451 ABC (AJWx).

United States District Court, C.D. California.

Aug. 3, 1998.

Johnna J. Hansen, Booth & Koskoff, Torrance, CA, for plaintiff.

Peter H. Klee, Thomas D. Bunton, Luce, Forward, Hamilton & Scripps, San Diego, CA, for defendants.

ORDER RE: Defendants' Motion for Summary Judgment

COLLINS, District Judge.

The Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment of Defendants ALLSTATE INSURANCE COMPANY and DONOYAN INSURANCE AGENCY came on regularly for hearing before this Court on August 3, 1998. After reviewing the materials submitted by the parties, argument of counsel, and the case file, it is hereby ORDERED that Defendants' Motion is GRANTED.

**I. Factual and Procedural Background**

The undisputed facts in this matter are as follows:

In 1983, Allstate issued Automobile Policy No. 4924371 (the "Policy") to Plaintiff CELIA CHARLIN's husband providing coverage for two vehicles, a 1972 Cadillac and a 1968 Chevrolet. Exhibit 1. On June 30, 1983, Plaintiff's husband signed a document rejecting uninsured motorist ("UM") coverage. Exhibit 2.

In 1989, the 1968 Chevrolet covered under the Policy was replaced by a 1989 Cadillac. Exhibit 3. Before December 20, 1990, Plaintiff was added to the policy as a named insured.

Sometime in 1991 or early 1992, Plaintiff's husband died. Exhibit 20. At Plaintiff's request, Allstate deleted Plaintiff's husband from the Policy on March 5, 1992. Exhibit 5. The Policy number remained the same and included Plaintiff as the named insured. After Allstate deleted Plaintiff's husband from the Policy, Plaintiff continued to renew the Policy. At no point did Plaintiff sign a waiver of UM coverage.

On May 11, 1997, Plaintiff was involved in an accident with an uninsured motorist while driving the 1989 Cadillac. Exhibit 6. On May 12, 1997, Plaintiff's son, Ron Charlin, reported the accident to Allstate. On May 14, 1997, Allstate spoke with Plaintiff's son and informed him that Plaintiff had $1,000 of medical payments coverage and no UM coverage.

On June 13, 1997, Plaintiff's counsel, Ronald A. Hecker, notified Allstate that Plaintiff was making a claim for insurance benefits. Hecker indicated that he would forward Plaintiff's medical bills or reports to Allstate when they became available. Exhibit 10.

Between June 13, 1997 and April 15, 1998, Hecker continued to seek UM benefits under the Policy for Plaintiff's injuries arising from the accident. On October 22, 1997, Allstate denied Plaintiff's claim, maintaining that there had been a waiver of UM coverage. On January 26, 1998, Allstate issued a check made payable to Plaintiff and Hecker in the amount of $1,000—the total medical payments allegedly due under Plaintiff's Policy. On February 4, 1998, Hecker asked Allstate to reconsider its position.

On March 27, 1998, Plaintiff commenced this action against Allstate and Donoyan Insurance Agency in Los Angeles County Superior Court.[1] Plaintiff's complaint alleges claims for breach of contract, fraud, and bad faith.

On April 30, 1998, Allstate reevaluated its initial position and sent Plaintiff a check in the amount of $30,000 for UM benefits. Allstate calculated this figure based on the amount which Allstate allegedly would have owed if the Policy did not contain a rejection of UM coverage. Plaintiff did not accept Allstate's offer.

On June 15, 1998, Defendants filed the instant motion for Summary Judgment or, in the Alternative, Partial Summary Judgment. Plaintiff timely filed her Opposition on June 29, 1998. Defendants timely filed their Reply on July 24, 1998.

## II. Discussion

### A. Summary Judgment Standard

It is the burden of the party who moves for summary judgment to establish that there is "no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *British Airways Bd. v. Boeing Co.,* 585. F.2d 946, 951 (9th Cir.1978). If the moving party has the burden of proof at trial (the plaintiff on a claim for relief, or the defendant on an affirmative defense), the moving party must make a showing sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party. *Calderone v. United States,* 799 F.2d 254, 259 (6th Cir.1986) (quoting W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact,* 99 F.R.D. 465, 487–88 (1984)). This means that, if the moving party has the burden of proof at. trial, that party must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in that party's favor. *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir.1986). Furthermore, the court must view the evidence presented to establish these elements "through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

If the opponent has the burden of proof at trial, then the moving party has no burden to negate the opponent's claim. *Celotex ·Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, the moving party does not have the burden to produce *any* evidence showing the absence of a genuine issue of material fact. *Id.* at 325, 106 S.Ct. 2548. "Instead, ... the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.*

Once the moving party satisfies this initial burden, "an adverse party may not rest upon the mere allegations or denials of the adverse

---

1. On May 5, 1998, Allstate and Donoyan removed the case to this Court. On July 15, 1998, the Court denied Plaintiff's motion to remand.

concluding that Donoyan was a fraudulently joined sham Defendant.

party's pleadings ... [T]he adverse party's response ... *must set forth specific facts* showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e) (emphasis added). A "genuine issue" of material fact exists only when the nonmoving party makes a sufficient showing to establish an essential element to that party's case, and on which that party would bear the burden of proof at trial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a reasonable jury could reasonably find for plaintiff." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor. *Id.* at 248, 106 S.Ct. 2505; *Griffeth v. Utah Power & Light Co.,* 226 F.2d 661, 669 (9th Cir.1955).

**B. Analysis**

█ Allstate contends that it is entitled to summary judgment because Plaintiff had no UM coverage under the Policy. It is undisputed that when Allstate initially issued the Policy to Plaintiff's husband, he executed a valid rejection of UM coverage. Thus, Allstate argues that when Plaintiff renewed her husband's Policy as the named insured, she was bound by her husband's prior rejection of UM coverage. The Court agrees.

California Insurance Code § 11580.2(a)(1) requires that automobile policies issued in California contain UM coverage unless such coverage is expressly rejected by the insured. Section 11580.2(a)(1) states, in part:

> The insurer and *any named insured,* prior to or subsequent to the issuance or renewal of a policy, may, by agreement in writing, ... delete the provision covering damage caused by an uninsured motor vehicle completely, .... [This] agreement [ ] by any named insured ... *shall be binding upon every insured* to whom the policy or endorsement provisions apply while the

policy is in force, and *shall continue to be so binding with respect to any continuation or renewal of the policy or with respect to any other policy which extends, changes, supersedes, or replaces the policy issued to the named insured by the same insurer,* or with respect to reinstatement of the policy within 30 days of any lapse thereof.

Cal.Ins.Code § 11580.2(a)(1) (emphasis added).

As previously noted, it is undisputed that Plaintiff's husband executed a valid rejection of UM coverage. Plaintiff also concedes that Plaintiff, as the named insured's spouse, was "an insured" under the Policy. Motion at 7.[2] Based on these undisputed facts and the clear language of § 11580.2(a)(1), the Court concludes that Plaintiff is bound by her husband's prior written rejection of the UM coverage.

Section 11580.2(a)(1) allows a "named insured" to reject UM coverage. That provision also expressly states that the rejection of UM by a named insured "shall be binding upon *every insured* to whom the policy or endorsement provisions apply...." In this case, the named insured—Plaintiff's husband—rejected the UM coverage on June 30, 1983. Thus, when he signed the rejection of UM coverage, it was binding upon Plaintiff.

Section 11580.2(a)(1) further provides that the rejection of UM coverage by a named insured "shall continue to be so binding with respect to any continuation or renewal of the policy or with respect to any other policy which extends, changes, supersedes, or replaces the policy issued to the named insured by the same insurer...." *Id.* Thus, the rejection of UM coverage by Plaintiff's husband was binding on Plaintiff and continued to be binding on her whether she merely renewed or continued her husband's original policy or whether she became the new named insured in a subsequent Policy.[3] Because the rejec-

---

**2.** California Insurance Code § 11580.2(b) defines "named insured" as "only the individual or organization named in the declarations of the policy of motor vehicle bodily injury liability insurance...." Cal.Ins.Code § 11580.2(b). That provision further provides, however, that "if the named insured is an individual 'insured' means

the named insured *and the spouse of the named insured....* " *Id.* (emphasis added).

**3.** The Court notes that the Policy number issued to Plaintiff's husband and the Policy number in effect on the date of the accident at issue are the same. Based upon the continuation of the Policy

tion of UM coverage by Plaintiff's husband continued to be binding on Plaintiff on the date of the accident, Plaintiff had no UM coverage at that time and Allstate had no obligation to provide UM benefits.

This conclusion is further supported by the California Court of Appeal's decision in *Craft v. State Farm Mut. Automobile Ins. Co.*, 14 Cal.App.4th 1284, 18 Cal.Rptr.2d 293 (1993). In *Craft*, plaintiff and her grandfather were both named insureds of the policy. The grandfather waived UM coverage. After Plaintiff's grandfather was removed from the policy, plaintiff remained as the sole named insured. The court held that his removal did not alter the policy and that the insurance company did not have to obtain a new UM waiver from the plaintiff. Specifically, the court stated that "if the only change in the policy is dropping or deleting from policy coverage and protection the named insured who executed the waiver, then, without more, the waiver continues in effect as to the remaining named insured(s)." *Craft*, 14 Cal. App.4th at 1293, 18 Cal.Rptr.2d 293.

Plaintiff attempts to distinguish *Craft* by noting that both the plaintiff and her grandfather in that case were named insureds. In this case, however, Plaintiff contends that only her husband was a named insured before he died, and that this factual distinction renders *Craft* inapplicable. The Court disagrees.

■ First, it is reasonable to infer from the undisputed evidence that Plaintiff was actually a named insured on the Policy before her husband died. Plaintiff contends that because she is not listed as a named insured on the Policy's declarations page, she is not a named insured. This claim is unavailing. Plaintiff has conceded that her husband is a named insured. The Policy's declarations page, however, does not list Plaintiff's husband as a named insured. Rather, the Policy lists both Plaintiff and her husband as "currently listed on the Policy." Thus, the Court concludes that Plaintiff was a named insured before her husband died even though the declarations page does not expressly specify her as such.

Second, even if Plaintiff were merely an "insured" when her husband died rather than a "named insured," the statutory language compels the conclusion that the rejection of UM coverage by Plaintiff's husband continued to be binding on Plaintiff. Section 11580.2(a)(1) specifically provides that a waiver of UM coverage by "any named insured ... shall be binding upon every insured." Moreover, that provision provides that the waiver of UM "shall continue to be so binding with respect to any continuation or renewal of the policy or with respect to any other policy which extends, changes, supersedes, or replaces the policy issued to the named insured by the same insurer." Cal. Ins.Code § 11580.2(a)(1).

As the *Craft* court noted, § 11580.2(a)(1) "does not require the subsequent policy to have the same named insured. Rather, the statute continues the binding effect of the deletion agreement where the same insurer issues a subsequent policy to extend/change/supersede/replace the earlier policy issued to the named insured." *Craft*, 14 Cal.App.4th at 1293, 18 Cal.Rptr.2d 293. Thus, even if Plaintiff were merely an insured, it is evident that the rejection of UM coverage by Plaintiff's husband bound her as an insured under the Policy. Plaintiff's subsequent renewal of the Policy continued to bind her to the rejection of UM coverage. For this reason, the Court finds the purported distinction between Plaintiff's status as an insured rather than a named insured of no consequence.

Because Plaintiff was bound by her husband's rejection of UM coverage whether she was an "insured" or a "named insured," the Court finds that Allstate did not owe Plaintiff any UM coverage under the Policy.[4]

number, the Court concludes that this was a renewal or continuation of the same policy. Nevertheless, even if the Court considered the Policy in effect on the date of the accident to be an extension of, change to, or replacement of the original Policy, the Court would similarly conclude that the rejection of UM coverage by Plain-tiff's husband continued to be binding on Plaintiff.

4. Because Defendants are entitled to summary judgment on Plaintiff's breach of contract claim, they are also entitled to summary judgment on Plaintiff's tort claims for fraud and bad faith.

### III. Conclusion

For all these reasons, the Court GRANTS Defendants' motion for summary judgment and DISMISSES the action.

**SO ORDERED.**

See *Waller v. Truck Ins. Exch., Inc.,* 11 Cal.4th 1, 35–36, 44 Cal.Rptr.2d 370, 900 P.2d 619 (1995) (holding that a bad faith claim cannot be maintained unless policy benefits are due under the contract).